## BAKER et al. v. ADKINS et al. (No. 7424.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 4, 1925. Rehearing Denied Dec. 23, 1925.)

**1. Railroads ⚹194(6)—Purchaser takes property subject to claim for damages.**

Under Rev. St. 1911, arts. 6624 and 6625, a railroad company, in buying property of a former railroad company, took property and franchises of former company subject to claim for damages for death of employé.

**2. Witnesses ⚹287(3)—Explanation of testimony, elicited on cross-examination, held proper.**

Where, in action against railway company for death of plaintiff's husband, an employee, due to negligence in caring for him while ill with smallpox, defendant elicited on cross-examination of plaintiff that she had failed to go to her husband knowing he was ill, it was not error to permit plaintiff to show that she was prevented from going by defendant's official.

**3. Appeal and error ⚹1050(2)—Admission of immaterial matter held not prejudicial.**

In death action against railway company, fact that defendant refused transportation to prospective son-in-law of deceased, who was going to assistance of deceased, held to be trivial and unimportant, and its admission was without prejudice.

**4. Evidence ⚹471(13)—Knowledge of expert not required to state facts.**

Knowledge of expert held not required to testify that, during last illness, deceased "would

try to grab with his hands, to hold something, as though he were afraid he would fall."

**5. Death ⚹33—Railroad receiver liable.**

Under the express provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 4694, a death action will lie against receiver of a railroad the same as if railroad was being operated by railroad company.

**6. Master and servant ⚹92(1)—Railroad receiver, assuming charge of sick employee, held liable for negligence.**

When employee of receiver of railroad company became ill, it was the duty of receiver either to notify county authorities of necessities of case, notify wife of stricken man, or assume care of him, and, having chosen the latter, he is held to reasonable care in giving aid, and, if negligent, must respond in damages.

**7. Master and servant ⚹96(1)—Negligence in caring for sick employee held proximate cause of death.**

In action against railway for death of employee from smallpox, negligent acts of receiver in treatment and care of deceased while ill, held to be proximate cause of death, and defendant was therefore liable, even though other causes contributed to the death.

**8. Death ⚹99(1)—Award viewed as though each plaintiff had sued alone.**

Where in a death action against railway each of a number of plaintiffs recover judgments, case, as to excessiveness of recovery, must be viewed as though each had sued alone.

**9. Death ⚹77—Verdict for adult child not sustained by evidence.**

Although in a death action there was no protest against an incorrect charge that recovery of damages was limited to widow and minor children, a verdict giving damages to adult child could not be sustained, where there was no testimony that deceased parent would probably have contributed to adult child's support.

**10. Death ⚹18(3)—Adult child can recover for death of parent contributing to support.**

Whether adult child can recover for death of parent depends on whether parent contributed to his support and maintenance.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Jessie B. Adkins, individually and as administratrix of the estate of G. B. Adkins, deceased, against James A. Baker, receiver of the International & Great Northern Railway Company, and another. From a judgment for plaintiffs, defendants appeal. Affirmed, on condition.

Andrews, Streetman, Logue & Mobley, of Houston, and F. C. Davis and Marshall Eskridge, both of San Antonio, for appellants.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

---

⚹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

FLY, C. J. This is a suit for damages arising from the death of G. B. Adkins, instituted by his widow, Jessie B. Adkins, as an individual and as administratrix of the estate of her deceased husband, who sought to recover against James A. Baker, receiver of the International & Great Northern Railway Company, and the 'Railway Company itself, on her own account and as administratrix in behalf of her children by her deceased husband, Florence McGarey, an adult married female, Virgil B. Adkins, an adult male, Meta G. Bentley, an adult married female, Maud Wolf, a married female, Birdie Thomas, a married female, Bert Adkins, a male minor, and Mildred Adkins, a female minor. It was alleged that deceased was contributing to the support of all the children named except Florence, and that the other females described as married have entered into that relation since the death of their father.

It was stated in the answer that James A. Baker had been the receiver of the Railway Company until December 1, 1923, when all the railway property was purchased by the International & Great Northern Railroad Company, and a long history is given of the indebtedness of the Railway Company, the sale of its properties by a court, the purchase by the Railroad Company, and the orders of the court in connection with said purchase and regarding the debts of the old corporation. A plea in abatement and in bar was filed, and the suit was answered under protest. The cause was submitted to a jury through seven special issues, all of which were answered favorably to appellees. Upon the answers the court rendered judgment in favor of Jessie B. Adkins, the widow, for $8,000, of the minor Mildred Adkins for $5,000, of the minor Bert Adkins for $3,000, of Birdie Thomas for $2,500, of Maud Wolf for $2,000, of Meta Bentley for $1,500, and of Virgil Adkins, an adult male, for $500, amounting in the aggregate to $22,500.

The grounds of negligence were based on allegations of the following facts: On April 23, 1916, and for quite a time prior to that date, deceased was an employee of the receiver as a member of a bridge gang; that he was employed between San Antonio and Laredo, and some days prior to said date deceased was taken down with smallpox; that such illness occurred near the station of Cotulla, Tex., and he was placed in a car which had been provided for and used by employees as sleeping quarters, and he abided therein until his death on April 23, 1916; that said death was brought about and superinduced by the negligence of the receiver in allowing deceased to remain in the car and not giving him proper treatment; that the car became very unsanitary and unclean, the openings were not screened so as to keep out flies and other insects, and worms were permitted to develop in the sores on the body of deceased;

278 S.W.—18

that the car was placed on a siding in a noisy place, and other cars were caused to come in contact with the sick man's car, which greatly shocked and disturbed him and greatly aggravated his illness. It was further alleged that on the day of the death of deceased the car in which he was lying was knocked off the track, and he died a few hours thereafter; that proper nursing and medical treatment was not given him.

The jury, in response to special issues, found that the receiver assumed the care and treatment of G. B. Adkins during his sickness; that the receiver was negligent in his care and treatment of the deceased as alleged in the petition; that such negligence proximately caused the death of G. B. Adkins; that the receiver permitted the sick man's car to be struck by other cars or locomotives, which was negligence that contributed to and caused the death of G. B. Adkins. The facts sustain the allegations and findings of the jury.

When the report of the receiver of the International & Great Northern Railway Company was made, he stated that certain suits were pending against him, and the federal court gave him a discharge in such suits, but the receiver was never finally and formally discharged, and it was contemplated by another order of the federal court that he should appear and defend suits against him at the cost of the Railway Company.

[1] Baker answered as receiver and asked submission of issues as receiver. The whole matter is purely technical and immaterial, for if the receiver was not a proper or necessary party the judgment against him as receiver amounts to nothing, as the Railroad Company will be compelled to pay off the judgment. Whatever the federal court may have undertaken "to reserve to itself," the state court had the power and authority to render the judgment just as it did in the case of Railway v. Smith (Tex. Civ. App.) 269 S. W. 886. That case settled the second proposition adversely to appellant. This court held therein that this identical Railroad Company was liable for such damages as are involved in this suit. This court said:

"We are of opinion that this case is brought directly under the provisions of articles 6624 and 6625, Revised Statutes of Texas, and that, under the provisions of those acts, the railroad company bought the property and franchises of the former railroad company subject to just such claims as that of appellees. * * * The court had jurisdiction of the cause and the parties."

The question involved has been settled against appellant in Railroad v. Oehler (Tex. Civ. App.) 262 S. W. 785, writ refused, and in Railway v. Concrete Investment Co. (Tex. Com. App.) 263 S. W. 265. But the question, like Banquo's ghost, will not down, and, like the brook, "goes on forever."

[2] The third proposition raises the ques-

tion of the propriety of permitting Mrs. Adkins to explain why she did not go to her husband when she learned he was sick. While being cross-examined by counsel for appellant Mrs. Adkins was asked if she went to her husband on Friday or Saturday, and she answered in the negative. She was then asked if any one told her what the matter was with her husband, and, being answered affirmatively, she was asked who told her. She stated that Mr. and Mrs. Tilford told her. Mrs. Adkins was then asked by her counsel why she did not go to her husband, and she replied because the Tilfords told her not to go, and stated that Mr. Tilford, the official of the railroad company in charge of the department in which the husband had worked, told her that her husband was having every attention, that she could not do any good, and that they would not let her go to the car if she went. The object of appellant's question to Mrs. Adkins was to show that she was unfeeling towards and did not desire to assist her husband, and thus place her in a bad light before the jury, and she undoubtedly had the right to show that she was prevented from going by appellant Railroad Company, through its official. Similar testimony on the part of Mrs. Adkins and of Mr. and Mrs. Tilford went in without objection on the part of appellants. The third proposition is overruled.

[3] The fourth proposition is overruled. The testimony of Bentley, who after the death of G. B. Adkins married his daughter, that he had asked for transportation from appellant from San Antonio to Cotulla in order that he might go out and see to the needs of Mr. Adkins. Transportation was refused on the ground that Adkins had smallpox. Bentley, however, paid his way out to Cotulla. He thought he was immune to smallpox, as he had had an attack of it. The doctor required Bentley to be vaccinated before he was permitted to see deceased, who he found in a filthy bed, surrounded by flies, in an unscreened car, in charge of a Mexican, and worms in his body. Bentley washed him and put clean bedclothing on the bed. This occurred on the day before Adkins died. The statement that he was refused transportation was trivial, unimportant, and, under the facts surrounding it, utterly immaterial. Appellant admits that "on first blush it may appear that it is a very small matter," but that it was adding "a small fagot" to some great imaginary conflagration that had been started. We fail to see that it was a fagot, or that it was added to any great fire that was under headway. Bentley was the employee of another railroad corporation, and had been requested by the family of deceased to go to his assistance.

[4] Bentley stated that when the car was struck, Adkins "would try to grab with his hands, to hold to something, as though he were afraid he would fall"; that he groaned as though something hurt him. This was a statement of facts, and the knowledge of an expert was not required to render a witness capable of swearing to the facts. The fifth proposition is overruled.

Through the sixth, seventh, and eighth propositions, under some 18 assignments of error, it is contended that appellants are not liable under the death statutes; the grounds being that no cause of action survived for alleged negligence in care and treatment of deceased; that striking the car in which deceased was lying had no causal connection with his death; and that appellants were not liable because the receiver, in treating the sick employee, went outside of his power and duties, because such action on his part was not connected with or incident to the transportation of persons and property for hire.

[5] Under the common law no action could be sustained for damages for the death of an individual, and the recovery of appellees must be based upon and supported by the statutes of this state in order to form a cause of action. It is provided in article 4694, Revised Statutes of Texas (Vernon's Sayles' Ann. Civ. St. 1914):

"When the death of any person is caused by the neglect or carelessness of the proprietor, owner, charterer, or hirer, of any railroad, steamboat, stage coach or other vehicle for the conveyance of goods, passengers, or by the unfitness, neglect or carelessness of their servants or agents; when the death of any person is caused by the neglect or carelessness of the receiver or receivers, or other person or persons in charge or control of any railroad, or their servants or agents; the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad was being operated by the railroad company."

[6] It is insisted that when the receiver assumed the care and treatment of his employee, who became sick while away from his home and while in the active discharge of his duties as such employee, that he went outside of and beyond the powers and duties of a carrier, and therefore neither he nor the railroad company in his charge at that time is liable no matter how careless and negligent he or his agents may have been in connection with such assumed treatment and care. When G. B. Adkins, deceased, was stricken down by smallpox he was in the active employment of appellants, and he was at night occupying a car furnished by the receiver. He was kept in that car, and the receiver assumed the responsibility and duty of treating, nursing, and caring for the sick employee. The receiver furnished his own physician, chose the nurses, and placed the car in a location chosen by him. The sick man was under the complete power and control of the receiver, who did not seek aid of

any one else, not even notifying the wife and children of the condition of the sick husband and father. The receiver assumed absolute control over the life and destiny of the sick man, his wife being informed by a railroad official that she would not be permitted to visit her husband, and the prospective son-in-law, who had taken and recovered from smallpox, was not permitted to see the sick man until he permitted the railroad doctor to vaccinate him. The employee of the receiver was under his control and authority; he was helpless, sick with a terrible disease, his family could not assist him because for a while they were kept in ignorance of his sickness, and when that was ascertained the wife of the sick man was assured that every attention was being given him. When at last their messenger got through barriers thrown about the sick man, it was ascertained that there had been brutal and criminal neglect of him, and that he had been permitted to lie in the most loathsome filth, with the flies lighting on his sores and impregnating him with worms, their vile offspring. He was in worse condition than the Scriptural beggar, Lazarus, whose sores were licked and cleansed by the "glutton's dogs." It would have taken the skill, power, and compassion of the "Great Physician" to have snatched health and recovery from the environments created by the servants of appellants. The unquestioned testimony of experienced and unbiased physicians showed that in cases of smallpox, as in the case of other violent diseases, cleanliness and skilled trained nursing are the essentials to recovery. These essentials were not given by appellant. This case of sickness created an emergency, and possibly the corporation was not legally bound to minister unto and care for the sick employee, although that is not so clear, but it assumed the obligation; it took up the burden whether imposed upon it or not. Notice could have been given to the wife, and advice asked as to the disposition of the sick husband, and the duty or call of humanity have been avoided, but this was not done. It was undoubtedly the duty of the receiver under the circumstances to make a reasonable effort to see that proper attention was given to deceased, either by notifying the county authorities of the necessities of the case, notifying the wife, or assuming the care of the man. Appellants took the latter course. As said in the case of Carey v. Davis, 190 Iowa, 720, 180 N. W. 889:

"One person seeing another in distress may or may not be under legal obligation to afford him relief, but, if he does undertake it, he is, of course, bound to act with reasonable prudence and care to the end that, if his effort be unavailing, it shall at least not operate to increase the injury which he seeks to alleviate."

In explaining its former action in a certain case the Supreme Court of Indiana held:

"We did not decide that a corporation was responsible generally for medical or surgical attention given to a sick or wounded servant; on the contrary, we were careful to limit our decision to surgical services rendered upon an urgent exigency, where immediate attention was demanded to save life or prevent great injury. We held that the liability arose with the emergency, and with it expired."

Again, it was said in the cited case of Carey v. Davis, that, while it might be true that the master is not under any duty to care for a sick or injured servant, for whose sickness or injury he is not responsible, still this doctrine was sometimes productive of shocking results, and that:

"To avoid this criticism there is a tendency of the courts to hold that, where in the course of his employment a servant suffers serious injury or is suddenly stricken down in a manner indicating the immediate and emergent need of aid to save him from death or serious harm, the master, if present, is in duty bound to take such reasonable measures or make such reasonable effort as may be practicable to relieve him, even though such master be not chargeable with fault in bringing about the emergency."

That is a mild presentation of the duty of the master toward the sick or injured servant who suddenly became or was injured while in the service of the master.

We approve the Kentucky holding in Troutman v. Railway, 179 Ky. 145, 200 S. W. 488. The Kentucky court delivered an exhaustive and logical opinion reviewing a number of decisions of state courts on the subject. The court, among other things, said:

"The relation of master and servant does not terminate the very moment the servant, on account of some injury received in the course of his employment, is made incapable of performing his duties, and the master, in the face of such a misfortune, no matter whose fault caused it, must exercise the same reasonable care to save the servant from further harm, or death that he would be required to exercise if the servant had not been injured. If the master cannot without incurring liability wantonly, recklessly or negligently inflict harm on the servant while in the performance of his duty and when he is able to look out for himself, neither should he be allowed to wantonly or negligently abandon him to suffer or die when he is helpless and dependent, merely because he has been injured. The duty of the master should not end with the injury, but continues until the emergency created by the injury has passed and until the servant has been placed where he will receive such reasonable care and attention as his injury demands and the surrounding circumstances will permit."

We approve this humanitarian view and repudiate the barbarous doctrine that the master, if a railroad corporation, can ignore the cry of distress of the injured or sick employee, his illness or injury coming on him

suddenly while serving the master. Certainly if the corporation assumes the duty of caring for the employee it must do so in a reasonably careful and competent manner, and if negligent cannot hide itself behind the cruel plea of such care being outside of its chartered duties. We commit ourselves to the theory that, even though a strict interpretation of the law as to the liability of the corporation master to the servant would permit it to turn aside in case of his sudden injury or sickness, while actively in its service, and refuse aid or assistance, still, if it should assume such care and assistance, to the exclusion of the family or other agencies, it will be held to the exercise of reasonable care in giving such aid, and if negligent it must respond in damages arising from such negligence. In this case appellants assumed the responsibility of reasonable care in treating G. B. Adkins, and they must respond in damages for the failure to exercise such care. The decisions of a number of states sustain this proposition, and the death statute sustains a judgment for damages arising under the facts of this case. Elliott on Railroads, § 222; Railway v. Taft, 28 Mich. 289, opinion by Judge Cooley.

The evidence in this case shows that not only did the receiver fail to notify the family or any one else of the condition of his employee, but assumed absolute and exclusive control of him, suffered him to lie in filth, exposed to the vilest insects and vermin, unwashed, with dirty, unclean bedclothing and untrained inefficient nursing, but in addition, on several occasions, ran cars or locomotives against the car in which deceased was helplessly lying, and added to his discomfort and nervousness, and hastened his dissolution. No such negligence has ever been excused, or condoned through any technicalities, by any decision brought to our notice.

The case of Railway v. Freeman, 97 Tex. 394, 79 S. W. 9, 1 Ann. Cas. 481, is relied on as sustaining appellant's nonliability in this case. The facts in that case were that the railway company maintained a hospital in which injured or sick employees could be treated, and an employee sent there for treatment developed smallpox, and he was removed from the hospital and placed in a pest camp. An incompetent attendant in such camp, without any precaution towards disinfection, went to a neighboring town and communicated smallpox to a third party who died in consequence. A majority of the court held that the railway company was not liable. The facts do not apply to this case. The relation of master and servant between the railroad company and the third party did not exist. The only similarity between this case and that is that in each one a man contracted smallpox and died. There is considerable dictum in the opinion of the majority, and the opinion is sharply criticized and forcibly dissented from by Judge Brown. In his summing up he said:

"From my point of view these objections to the majority opinion present themselves: First. It applies to a remedial statute the most rigid rule of construction, thereby limiting the liability instead of promoting the remedy. Second. In construing the terms of the statute, the rules of the common law are disregarded, its interpretation and limitations are not applied. Third. The opinion does not reflect the manifest intention of the Legislature, but denies relief wherein the lawmakers intended to give it, and acquits the railroad company from liability that the Legislature intended to fix upon it. Fourth. The statute prescribes the plain and simple rule, that the right of the deceased to recover for the injury shall be the standard by which to determine the right of his relatives to recover for his death; but the opinion destroys that rule and affords no safe guide by which to determine the rights of parties in cases like this."

The facts as well as the law of that case are not applicable to this case, and we have only quoted the language of Judge Brown to show that even in a case like that the language and decision of Judge Williams were not permitted to go unchallenged.

Well might Judge Brown have objected to the language of the opinion in the last-cited case, because in the case of Railway v. Wood, 95 Tex. 223, 66 S. W. 449, 56 L. R. A. 592, 93 Am. St. Rep. 834, the Supreme Court, with the same personnel, had held that when a railway company undertook to treat and care for an employee it assumed the duty of using ordinary care, not only as to his treatment, but also as to preventing him, in his delirium, from escaping and communicating the disease to others. The opinion in the Wood Case, as well as the dissenting opinion in the Freeman Case, are adhered to in Sullivan v. Cooper, 105 Tex. 21, 142 S. W. 1168. We repeat, however, that the opinion in the Freeman Case was given on the ground that the relation of master and servant did not exist between the railway company and the man, an outside party, who contracted smallpox. There is nothing pertinent to the facts of that case, stated in the opinion, that militates against the opinion of this court in this case. The sixth, seventh, eighth, ninth, tenth, and eleventh propositions are overruled.

The negligence in this case was that of the receiver and not of any hospital association. The nurses, untrained men, were selected by the receiver, and it was clearly proved that in smallpox cases it is essential that trained, experienced nurses should be employed, and that the nursing is 75 per cent. of proper treatment. It was also proved that an experienced nurse would have bathed the patient three or four times a day in antiseptic solutions. The testimony indicates that the patient was never bathed or his clothing or bedclothes changed during his long ill-

ness, until the day before his death, when he was bathed and his clothes changed by Bentley. The grossest negligence was shown in the case of the sick man, and the receiver was responsible for the neglect and inexcusable carelessness and disregard for the comfort of the helpless patient. The doctors all concurred in the opinion that the collisions with other cars or the locomotive, for which the receiver was responsible, would cause a turn for the worse and hasten death.

[7] The acts of negligence shown by the testimony and found by the jury were proximate causes of the death of G. B. Adkins. It was not necessary that these acts of negligence should be the sole cause of the death of the deceased, but if they, together with smallpox, brought about the death, appellants are liable. It did not matter who had provided the physician. Appellants had been guilty of negligence that contributed to the death of G. B. Adkins, and that was sufficient to fix liability. The question of who furnished the medical treatment was suggested by appellants in conjunction with other suggested issues, and they were properly refused. The circumstances by which the deceased was surrounded were created by the receiver. The patient was in the hands of the receiver, he had assumed the care of the patient, and it was his duty to see that the sick man received proper medical treatment, and he cannot shift his liability by the claim that some one else employed the physician. It was his duty to see that the physician was skilled and efficient. The court was justified in refusing the issues suggested by appellants.

[8] The record gives no evidence of the malice, prejudice, or passion of the jury, and those states of mind could not have moved the jury to render the verdict they did as to the amount of the damages. Five of the children were minors when the father died, Virgil, however, becoming 21 years of age on the day of the burial of his father. Under the testimony the widow was entitled to the recovery of $8,000, and her recovery must be viewed as though she had sued alone and that sum awarded her by the jury. The amounts recovered by the children must be viewed in the same way. The verdict in the aggregate cannot be held as a matter of law to be excessive as to those entitled to recover. As said by this court in Railway v. Blair, 184 S. W. 566:

"Every parent and husband has, for his wife and children, a pecuniary value beyond the amount of his earnings by his labor or vocation."

A writ of error was denied in that case, in which the judgment was for $25,000. This court does not have the authority, if it had the desire, to substitute its judgment as to the proper amount of the verdict for that of the jury.

[9, 10] Complaint is made of the recovery of $500 by Virgil Adkins, who lived with his parents and attained his majority on the day his father was buried. The complaint seems to be on the ground that the court by his charge confined the recovery of damages to minors, and that is supported by the record. The court charged:

"Such pecuniary benefits, if any, with respect to the widow might include maintenance and support, together with advice and counsel; and with respect to the children, maintenance, education, and care, if any, during minority."

The death statute does not confine the recovery for a parent's death to minors, but says that:

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been caused. * * *"

That language would not exclude the adult child, male or female, who made his or her home under the family rooftree and received any maintenance or support from the parents. Beaumont Traction Co. v. Dilworth (Tex. Civ. App.) 94 S. W. 352; Railway v. Robinson (Tex. Civ. App.) 127 S. W. 294. The test for the adult child is, did the parent contribute to the support or maintenance of such adult? It follows that the charge of the court was incorrect in limiting a recovery to the minors, but, having done so without a protest from any one, and although there might have been proof that the adult, Virgil Adkins, had incurred actual damages, the verdict in his favor was not in response to the charge; no objection was made to the verdict on that ground in a motion for new trial covering over 20 typewritten pages of the transcript. However, as there was no testimony tending to show that the deceased father would have probably contributed to the support of the son after he reached his majority, that part of the verdict cannot be sustained.

If a remittitur is entered within ten days from the filing of this opinion for the $500 in favor of Virgil Adkins, the judgment will be affirmed for $22,000; otherwise it will be reversed and the cause remanded.

Affirmed, if remittitur is entered; otherwise reversed and cause remanded.