## ATCHISON, T. & S. F. RY. CO. v. HIX.
### (No. 1916.)

(Court of Civil Appeals of Texas. El Paso. Dec. 30, 1926. Rehearing Denied Jan. 20, 1927. Supplemental Opinion Feb. 24, 1927.)

1. **Appeal and error** ⚖➔428(1)—**Notice of appeal need not be filed with clerk of trial court as condition to an appeal (Rev. St. 1925, art. 2253).**

Rev. St. 1925, art. 2253, as adopted by Legislature, does not require notice of appeal to be filed with clerk of trial court as condition to an appeal, and hence failure to file is not cause for dismissal, where notice of appeal had been given in open court and recorded in the minutes, as required by statute.

2. **Statutes** ⚖➔286 — **"Enrolled" bill controls over printed copy.**

Where printed copy of statute and "enrolled" bill differ, the enrolled bill controls.[1]

3. **Master and servant** ⚖➔77—**Employee, injured or becoming ill, has no general right to medical attention by master.**

Master has no general duty to provide surgical or medical attendance to employee who becomes ill or is injured in course of employment.

---

**4. Master and servant ⊚⟶77—Railroad must provide emergency treatment for injured brakeman (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), railroad *held* bound to provide emergency medical and surgical treatment where brakeman fell under train and wheels passed over his legs, though no negligence of railroad caused accident.

**5. Master and servant ⊚⟶77—Railroad undertaking to furnish emergency treatment to injured brakeman must exercise reasonable care (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), *held* that where railroad undertook to furnish emergency medical and surgical treatment to brakeman who fell under train which passed over his legs, it was bound to exercise reasonable care, even if it had no original obligation to furnish emergency treatment.

**6. Master and servant ⊚⟶96(1)—Death as proximate result of breach of duty prerequisite to recovery, under federal act (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

Right of action of beneficiaries, under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of employee is dependent on existence of duty to deceased immediately before his death, breach thereof, and death as the proximate result.

**7. Death ⊚⟶82—Finding of no damages for conscious pain does not preclude recovery for death, under federal act (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), that jury assessed damages for conscious pain suffered by deceased at nothing does not affect right of beneficiaries to recover for pecuniary loss caused by his death.

**8. Appeal and error ⊚⟶301—Failure to request trial court to set aside verdict for insufficiency of evidence precludes consideration of sufficiency by appellate court.**

Appellate court cannot consider sufficiency of evidence to support verdict, unless trial court has been asked to set it aside on that account.

**9. Appeal and error ⊚⟶237(6)—Sufficiency of evidence raised in motion for new trial may be considered, though motion to set aside verdict was not made.**

Question of sufficiency of evidence to sustain finding may be considered by appellate court, where question was raised by motion for new trial instead of by motion to set aside verdict.

**10. Master and servant ⊚⟶286(1)—Railroad's negligence in failing to obtain doctor to attend injured brakeman held for jury (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

In action, under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of brakeman who fell beneath wheels of freight train, negligence of railroad's employees in failing to obtain doctor at station just ahead *held* for jury.

**11. Master and servant ⊚⟶278(1)—Evidence held not to sustain finding of railroad's negligence in failing to promptly take injured brakeman to hospital (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

In action, under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of brakeman who fell under the wheels of a freight train, finding that railroad was negligent in failing to take brakeman to hospital promptly *held* not sustained by evidence.

**12. Evidence ⊚⟶20(2)—Court takes judicial notice that time is required for trains to pass, go in and out of stations, obtain orders, and for train on side track to proceed.**

It is common knowledge that it takes time for trains to pass, to go in and out of stations, to obtain orders, and for a train on a side track to go back on the main line and proceed.

**13. Judgment ⊚⟶199(3)—Judgment notwithstanding verdict cannot be rendered for insufficiency of evidence.**

Trial court cannot render judgment contrary to the verdict on the ground of insufficiency of evidence, but this question must be raised by motion to set aside the verdict on that ground or by motion for new trial.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Willie M. Hix, administratrix of the estate of Henry S. Hix, deceased, against the Atchison, Topeka & Santa Fé Railway Company. Judgment was rendered for plaintiff. Defendant appeals, and plaintiff moves to dismiss the appeal. Motion denied, and cause reversed and remanded.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for appellant.

Scarborough & Wilson, of Abilene, and Dyer & Morton, of El Paso, for appellee.

HIGGINS, J. [1, 2] In the order of the trial court overruling appellant's motion for new trial, dated October 30, 1925, its exception and notice of appeal is noted in due form.

In the printed copy of the codification of 1925, article 2253 reads:

"Art. 2253. (2084) (1387) (1387) *Appeal Perfected.*—In cases where an appeal is allowed, the appellant shall give notice of appeal in open court within two days after final judgment, or two days after judgment overruling a motion for a new trial, which notice shall be noted on the docket or record in the minutes of the court, and filed with the clerk together with an appeal bond or affidavit in lieu thereof as provided by law. Such bond or affidavit shall be filed with the clerk of the trial court within twenty days after the expiration of the term or after notice of appeal is given when the term continues by law

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

more than eight weeks, if the party taking the appeal resides in the county, and within thirty days, if he resides out of the county."

Appellee moves to dismiss the appeal because notice of appeal was not filed with the clerk as required by the article. In reply to this motion, appellee has filed a certified copy of said article from the enrolled bill, adopting and establishing the Revised Civil Statutes of 1925, on file in the office of the secretary of state. This copy and the certificate of the secretary of state read:

"Art. 2253. (2084) (1387) (1387) *Appeal Perfected.*—In cases where an appeal is allowed, the appellant shall give notice of appeal in open court within two days after final judgment, or two days after judgment overruling a motion for a new trial, which notice shall be noted on the docket or record in the minutes of the court, and file with the clerk an appeal bond or affidavit in lieu thereof as provided by law. Such bond or affidavit shall be filed with the clerk of the trial court within twenty days after the expiration of the term or after notice of appeal is given when the term continues by law more than eight weeks, if the party taking the appeal resides in the county, and within thirty days, if he resides out of the county. Id.

"The State of Texas, Department of State.

"I, Emma Grigsby Meharg, secretary of state of the state of Texas, do hereby certify that the above and foregoing is a true and correct copy of article 2253, contained in chapter 12 of title 42 of the enrolled bill, filed in my office on the 1st day of April, 1925, and now on file in my office, which bill is designated in the title as, 'A Bill to be entitled "An act to adopt and establish the Revised Civil Statutes of the state of Texas,"' and which bill was duly signed by the Speaker of the House of Representatives and the President of the Senate and approved by the Governor before being filed in my office.

"In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the seal of state at my office in the city of Austin, this the 10th day of December, A. D. 1926.                    Emma Grigsby Meharg,
"[Seal.]                    Secretary of State."

It is thus shown that the article of the revision, as it was adopted by the Legislature, did not contain the requirement that the notice of appeal be filed with the clerk; all that was required by the article, as it was, in fact, adopted, was to give notice of appeal in open court, which should be noted on the docket or recorded in the minutes of the court. This court is not advised how it happens that the printed copy differs from the enrolled bill. In any event, the change was unauthorized and the enrolled bill controls. Central Ry. Co. v. Hearne, 32 Tex. 562; Williams v. Sapieha (Tex. Civ. App.) 59 S. W. 947; 3 Words and Phrases, First Series, page 2400; 36 Cyc. 966; Sedgwick Co. Com'rs v. Bailey, 13 Kan. 600; Nugent v. City of Jackson, 72 Miss. 1040, 18 So. 493; Ruckert v. Railway Co., 163 Mo. 260, 63 S. W. 814; McLaughlin v. Menotti, 105 Cal. 572, 38 P. 973, 39 P. 207; Bruce v. State, 48 Neb.

570, 67 N. W. 454; Pease v. Peck, 18 How. 595, 15 L. Ed. 518; County of Santa Clara v. Southern Pacific (C. C.) 18 F. 427.

Notice of appeal having been given in open court and recorded in the minutes, which is all that the enrolled bill requires, the motion to dismiss is overruled.

The action was brought by Willie M. Hix, administratrix of the estate of Henry S. Hix, deceased, against the Atchison, Topeka & Santa Fé Ry. Co., to recover damages on account of the death of her intestate, husband of the plaintiff.

On November 4, 1922, the deceased was head brakeman on a freight train of the defendant, moving from Pueblo to La Junta in the state of Colorado, engaged in interstate commerce. As the train approached and was about a mile from the station of Swink, the deceased was hanging to the side of a car examining a hot box, and, as it crossed a bridge, he was struck by the side of the bridge, fell from the car, and had both legs run over by the train, one below, the other just above the knee. La Junta was about five miles from Swink and about six miles from the place of the accident. Shortly after the injury Hix was taken to a hospital at La Junta, where his mangled limbs were amputated. He died upon the same day.

The petition alleged that the train upon which Hix was working was engaged in interstate commerce, and he was engaged in such commerce at the time he was injured; that the accident which inflicted his injury was caused by the negligence of the defendants. These alleged acts of negligence need not be stated as upon the trial no evidence in support thereof was adduced and no issue with respect thereto submitted.

It was further alleged that, in the sudden emergency created by the accident and helpless situation of the decedent, it became appellant's duty to render first aid treatment to him at Swink and this it failed to do, but negligently moved him on the train to La Junta, and, further:

"That defendant, recognizing the duty thus imposed upon it by the sudden emergency, did assume and undertake to obtain and render surgical assistance to said Hix in that it did, after more than an hour from the time the accident to Hix was discovered by those in charge of defendant's train, take him to a hospital at La Junta, Colo., which was only six miles from the place of the accident, and that in so doing defendant acted in such a careless and negligent manner in that it failed to use the reasonable means at hand to get the said Hix to a surgeon or hospital within a reasonable time, although the means of so doing were available to defendant."

Among other matters set up in defendant's answer, it alleged that on the first available train it promptly carried the injured man to the hospital of the Atchison, Topeka & Santa Fé Hospital Association at La Junta, of

which Hix was a member, where he received every possible attention; that said association had its own physicians and defendant had none in its employ; that said association was not under the control of defendant, but was controlled by its own officers and physicians under the direction of its own board of trustees, and defendant had nothing to do with it aside from such voluntary and charitable contributions thereto as it made from time to time.

Upon the trial, no issue was made as to the character of the commerce in which the train and the deceased were engaged at the time of the accident, it being admitted by the defendant that it was interstate. As before stated, no issue was submitted with respect to the alleged negligence of defendant in causing the accident, because no such negligence was shown. The jury found against the plaintiff upon the issue of defendant's alleged negligence in failing to obtain the services of a doctor to render aid to Hix at Swink, and in favor of the plaintiff upon the issue of negligence in failing to get Hix to the hospital at La Junta promptly after his injury was discovered. The pecuniary loss of the plaintiff and the child of deceased was assessed at $18,000. The answer to the issue of the amount of damages sustained by deceased on account of conscious pain suffered was "No dollars."

Judgment was rendered in favor of the plaintiff for $18,000, which was reduced to $12,000 by remittitur, required by the court upon overruling defendant's motion for new trial.

[3-5] Appellant's first insistence is that there can be no recovery, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for injuries resulting in death, the employer not being liable for the primary injury.

This question, under the federal Employers' Liability Act, has never been passed upon so far as we are advised, but has been considered in a number of cases by state courts in cases arising under the death by wrongful act statutes of such states.

In the absence of a statutory or contractual obligation, as in the present case, there is no general duty resting upon the master to provide surgical or medical attendance upon an employee during incapacity, who becomes ill or is injured in the course of his employment. However, in a number of cases it has been held by state courts that, when, in the course of his employment, a servant sustains serious injury and is suddenly stricken down in a helpless condition so that he is incapable of aiding himself, and there is an immediate and urgent need for medical and surgical attention to save his life, it is the duty of the master to provide such emergency medical and surgical aid, and for the negligence of the master in so doing he is liable in damages in case death ensues as the proximate result of such negligence. The authorities make no distinction in cases where the primary injury occurred without negligence on the master's part. Baker v. Adkins (Tex. Civ. App.) 278 S. W. 272; Hunicke v. Meramec Quarry Co., 262 Mo. 560, 172 S. W. 43, L. R. A. 1915C, 789, Ann. Cas. 1915D, 493; Troutman's Adm'x v. Railway, 179 Ky. 145, 200 S. W. 488; Railway Co. v. Early, 141 Ind. 73, 40 N. E. 257, 28 L. R. A. 546; Railway v. State, 29 Md. 420, 96 Am. Dec. 545; Salter v. Nebraska Teleph. Co., 79 Neb. 373, 112 N. W. 600, 13 L. R. A. (N. S.) 545; Railway v. McMurray, 98 Ind. 358, 49 Am. Rep. 755.

There are also cases which hold that, although under no original obligation so to do, if the master undertakes in emergency the relief of a sick or injured employee, he is bound to exercise reasonable care so that the sickness of or injury to the employee shall not be increased and his life endangered. Baker v. Adkins, supra; Carey v. Davis, 190 Iowa, 720, 180 N. W. 889, 12 A. L. R. 904; Karabalis v. Du Pont de Nemours, 129 Va. 151, 105 S. E. 755; Troutman v. Railway, supra.

In Baker v. Adkins, supra, the San Antonio Court of Civil Appeals, in an opinion by Chief Justice Fly, considered the master's liability under the state statute and held the master liable under both of the grounds above stated.

In our opinion, the ruling made was correct and it had the approval of the Supreme Court implied by the refusal of the writ of error and is binding upon this court.

In our opinion, there is nothing in the language of the federal Employers' Liability Act which excludes the application of these two grounds of liability in the case of an employee injured while engaged in interstate commerce. There being no ruling by the federal courts upon the question, we are at liberty to hold and do hold that such liability attaches to the master in a proper case arising under the act.

[6] The second contention of appellant is thus stated in its brief:

"The appellees, as beneficiaries, had no better cause of action than would deceased if he had lived, and as appellant would not have been liable to him for the injuries received, it could not and did not become liable to the appellees on account of his death."

We are not sure we correctly grasp appellant's position.

Of course, if there was no breach of duty owing by appellant to deceased immediately after he was injured, no liability accrues to his beneficiaries. The right of action of the beneficiaries is dependent upon the existence of a duty owing by the defendant to the deceased immediately before his death, a breach of that duty and death ensuing as a

proximate result of such breach. Railway Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192; 57 L. Ed. 417, Ann. Cas. 1914C, 176.

[7] But, under the ruling above made, we are of the opinion that, when the deceased was found upon the track in his helpless mangled condition, it became appellant's duty to provide emergency medical and surgical attention in an effort to save his life, and if there was no such original duty appellant voluntarily assumed the same. Whether the duty was original or assumed, a cause of action vested in the deceased for breach thereof. The fact that the jury assessed no damages for conscious pain suffered by the deceased does not affect the right of his beneficiaries to recover the pecuniary loss sustained by them through his death, for, as was said in Railway v. Craft, 237 U. S. 648, 35 S. Ct. 704, 59 L. Ed. 1164:

"And when this provision and section 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived. Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong."

The only effect of the jury's failure to award any damages for conscious pain suffered by the deceased was to eliminate that element of damages.

[8, 9] Appellant questions the sufficiency of the evidence to sustain the finding to the effect that defendant's agents and employees were negligent in failing to get Hix to the hospital promptly after his injury was discovered, and that such negligence was the proximate cause of his death. Appellee objects to the consideration of this question because no motion was made to set aside the findings of the jury but "only a motion for new trial." It is, of course, the settled rule of practice that an attack upon the sufficiency of the evidence to support a verdict cannot be considered by this court unless the trial court has been asked to set it aside on that account. But we know of no rule of practice which forbids the complaining party from presenting the matter in a motion for new trial, instead of motion simply to set aside the verdict. The usual practice is to present the matter in the motion for new trial. This was done, with respect to the finding of negligence in failing to take Hix

to the hospital promptly, by the twenty-seventh paragraph of the motion for new trial, which is carried forward in the brief as an assignment of error. This is all that is necessary to raise that question here.

[10] The evidence discloses, without dispute, the following:

Hix was knocked from the side of a box car as the train was approaching Swink en route to La Junta. When he fell, the train passed over both legs, but did not sever same. All of the evidence is to the effect there was but little hemorrhage. The train upon which Hix was working was to meet at Swink local freight No. 602, going in the opposite direction. No. 602, in charge of Conductor Tyler, reached Swink at 6:38. No. 6 was a fast passenger train running late that morning. It was going in the direction of Swink, but evidently had not reached La Junta at the time Hix was injured. It left La Junta at 6:42 and reached Swink at 6:59. Hix had then been placed in a "way" car.

When the passenger train passed Swink, the way car was attached to the engine of Hix's train and the engine and car left Swink at 7:20 and arrived at La Junta at 7:30, and was met by an ambulance in which Hix was promptly taken to the hospital referred to in defendant's answer, where he immediately received all proper medical and surgical attention. When he arrived at the hospital, he was in a condition of shock which was the immediate cause of his death the same day at 1:05 p. m. It was about an hour and ten minutes from the time Hix was injured until he reached the hospital.

Hix was injured and his condition discovered by the rear brakeman, Nelson, at 6:28 a. m. Nelson testified he was in the caboose at the time when a Mexican came up and told him the head brakeman was killed. Looking out, he saw Hix and started to him. When he reached him, several men had gathered around whom he told to put Hix in the caboose. Nelson kept on going to stop the train to keep it from pulling out without them. Reaching the caboose, he pulled the conductor's valve and gave a stop signal which nobody saw. He then grabbed a fusee which he lit and ran for the engine. Passing the engine running, he told the engineer the head brakeman had both legs cut off. He then saw the conductor coming from the office towards the engine. Passing the conductor on the run, he told him the same thing. He continued on the run for a doctor. Finding Dr. Newkirk at Swink, he—

"told him our brakeman had both legs cut off, and to come right down. Then I went back, and by the time I got back, they had headed in—got Hix in the caboose and headed in and let the passenger train by, because he was out of La Junta. The passenger train was out of La Junta, and we couldn't stop it. I went down to direct the ambulance where to go, they were

coming over the detour road, and I went to the crossing to direct them, and kept waiting for them. They didn't come, and No. 6 had come, so I cut the engine off and come up the main line, by that time Tyler had taken his engine and took our caboose and put on the main line so he could couple in and take it to La Junta."

With reference to the ambulance referred to by Nelson, it may be here stated that it was shown by the testimony of Dr. Johnson of the hospital at La Junta that an ambulance was dispatched from the hospital to Swink to get the injured man, but it broke down and did not reach there.

Dr. Johnson testified:

"I was called soon after 7 o'clock, at my home, and notified that a man was to be brought to the hospital, seriously injured. It was between five and six miles from La Junta to Swink, where this accident is supposed to have happened, and a little after 7 I got the word that the man was being brought to the hospital. These things move automatically at the hospital; if an ambulance is wanted, we send it. It was reported to me that the ambulance was on the way to get him, at the time I was notified of it. As to the condition of the wagon road from La Junta to Swink at that time—at that time, just out of La Junta, they were putting in paving, and it was necessary to detour around that, going half a mile further south and coming out about three-quarters of a mile away from the main road further down, two or three miles down. The road on the detour was not in good condition at that time, and I think, judging that the road was rough, that the caboose would bring the man in smoother and easier than in the ambulance. * * * I investigated the way this matter was handled. I made a complaint to the officials, and they investigated it, and I did, too. I don't remember making a report; I remember I asked about it. I didn't make a direct complaint of the manner this man was handled after he was hurt. I investigated it mainly because of the ambulance service; I made no complaint against the train service. It was customary for our ambulance to be very speedy, and the man came into the hospital in another ambulance, and I investigated that, due to the fact that the ambulance we usually use broke down and another ambulance brought the man from the train. The man arrived at the hospital shortly before 8 o'clock, and the circumstances were such that I thought it reasonable to investigate it. I did that on account of the ambulance service, I wondered why the other ambulance brought him in. I didn't complain on the score that they didn't get the doctor at Swink, and I didn't mention the delay in getting him to me; I mentioned the fact that I wanted to know why our ambulance didn't serve in that case. I do not want the jury to understand that I was concerned rather in the service of the ambulance than in this man, but I want them to understand the reason I investigated this case. The ambulance service operates under the hospital, and, as I mentioned yesterday, operates automatically, without my supervision. The man was brought to the hospital by another ambulance, and I inquired why our ambulance was not called, and why it was not used. I found that our ambulance was called and had broken down, and the other ambulance had been called to go to Swink to get this man, and by that time they could see the train maneuvering, and called the ambulance back to meet him at the station, so no time would be lost at the station."

The testimony of the conductor of the train is of no particular importance. He said he met the rear brakeman between the depot and the engine, and the brakeman told him of the accident.

The witness Keister testified:

"The first knowledge I had that there had been an accident was as I was just coming out of the hotel to go to work, and Mr. Nelson, the brakeman, come running up the street all out of breath, and he asked me where the doctor lived and I told him, and then I followed him right up, and ran over to the doctor's house, too, and got the doctor out. That was Dr. Newkirk. He really was called in this case; he was called then. Then he went to Kimble's house to get his car; we thought we could take him in the car, but Kimble's car wasn't in running condition at the time. So I went to work at the Santa Fé office, and Tyler came in a little while after, I guess about ten after seven, and he said, 'Can't we get a doctor for this man?' I says, 'I went for a doctor;' he says, 'He hasn't seen him so far;' I says, 'I will go again;' and I went again, the second time, and the doctor came down and just saw the caboose leaving then; they were going to La Junta. I guess they figured that was the quickest way out, or better attention, I guess they figured, that way than the other. I was trying to get attention for this man; I went twice."

Dr. Newkirk, referred to in the testimony of Nelson and Keister, testified:

"Yes; I was in Swink, Colo., on November 4, 1922, when Henry S. Hix was injured by falling under the wheels of a freight train at the edge of the town of Swink. I did not have any such call as a call to see Henry S. Hix after his injury. I never saw this case, and I did nothing in the way of treating him. I had no occasion to treat Henry S. Hix because I was not called in the case. There were no other physicians in Swink, Colo., at the time of the injury to Mr. Hix."

Cross-interrogatories: "I did not see Henry S. Hix. Swink, Colo., is a small town. I did not see Mr. Hix and cannot describe his injuries."

Dr. Newkirk's testimony contradicts that of Nelson and Keister that he was called to attend the injured man. It is not claimed that any medical attention was given Hix at Swink.

While the jury found that defendant's agents and employees were not negligent in obtaining the services of a doctor to render aid to Hix at Swink, and they were not, if the jury believed Nelson and Keister, as it evidently did, yet Newkirk's testimony raises an issue of fact as to whether the employees were negligent in failing to obtain a doctor at Swink.

[11, 12] As to the sufficiency of the evidence to support the finding of negligence in failing to promptly take Hix to the hospital, we are of the opinion the facts fail to sustain the finding.

The passenger train reached Swink at 6:59. At 7:30 the train bearing the injured man arrived at La Junta. In the intervening 31 minutes the passenger train cleared the station of Swink, the way car and engine which carried Hix got back on the main line and traveled five miles to La Junta, the running time being ten minutes. There is no evidence whatever that the 31 minutes' time taken for these operations was an undue length of time. The train master testified "they made time all around," and it is a matter of common knowledge that it takes time for trains to pass, to get in and out of stations, obtain orders, and for a train on a side track to get back on the line and proceed. If there was any undue delay in taking Hix to La Junta, it was because of the defendant's failure to hold the passenger train there until he could be brought there on his train. It does not definitely appear at what time the news of Hix's injury reached the defendant's employees at La Junta, but it is apparent it was before the departure at 6:42 of the passenger train. Nor does it appear who received this information. In the absence of any evidence to show that some agent or employee of defendant authorized to control the movement of the passenger train knew, or should have known, of the necessity of holding that train at La Junta to permit Hix being brought there, and that such knowledge was or should have been obtained in time to hold the passenger train there, then defendant cannot be held liable for any failure to hold said train at La Junta. There is no such evidence.

Under the facts reflected by this record, and disregarding the evidence showing the efforts to obtain a doctor at Swink and the dispatch of an ambulance from La Junta which broke down, we are of the opinion there is no evidence showing negligence on the part of defendant's agents and employees in promptly taking Hix on his train to the hospital at La Junta, and the adverse finding of the jury upon that issue cannot be sustained.

[13] This renders it unnecessary for us to consider whether there is any evidence to show that delay in reaching the hospital was the proximate cause of death.

Furthermore, we doubt if this matter was called to the attention of the trial court so as to authorize this court to review the question. There was a motion to render judgment contrary to the finding, but, under our practice, the court cannot render judgment contrary to the verdict, however insufficient the evidence may be to support the same.

This rule of practice is imperative. The party questioning the sufficiency of the evidence to support the verdict must move to set aside the verdict either in motion for new trial, or by simply moving to set aside the verdict because of such insufficiency.

The ruling upon evidence complained of by appellant presents no error. Railway v. Wagner, 239 U. S. 452, 36 S. Ct. 135, 60 L. Ed. 381; Mondou v. Railway, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 347, 38 L. R. A. (N. S.) 44; Railway v. Schubert, 224 U. S. 603, 32 S. Ct. 589, 56 L. Ed. 915.

Reversed and remanded.

### Supplemental Opinion.

We note in the January, 1927, issue of Vernon's Texas Statute Service, in an explanatory note to article 2253, Vernon's Annotated Texas Statutes, 1925, there is quoted the last clause of the first sentence of said article, as it read in the original bill presented to the Legislature for adoption.

It appears there is no discrepancy between said clause, as proposed, and as enrolled. The text of the two is the same.