# W. A. WILKE v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

November 10, 1933.

No. 29,507.

*Leach & Leach,* for appellant.
*Stearns, Stone & Mackcy,* for respondent.

*HOLT, Justice.*

Plaintiff appeals from the judgment of dismissal.

The action was brought to recover for the wrongful death of plaintiff's intestate, Arthur Paape, an employe of defendant, which death occurred on July 11, 1930. The complaint alleges that on July 11, 1930, defendant, in the operation of its gravel pit near Randolph,

[1]Reported in 251 N. W. 11.

Minnesota, employed Arthur Paape to move its track therein; that the day was excessively hot; that because of its depressed location the heat was exceedingly oppressive in the pit where Paape was required to work; that because of the heat Paape became sick and helpless and so remained for a considerable time in the presence and to the knowledge of defendant, its agents, and servants, until he died on said date, without receiving any aid or attention; that defendant and its agents and servants well knew the danger attending one required to work in that place during such heat; but that Paape did not know or appreciate such danger and that, notwithstanding, defendant negligently required him so to work knowing that he might be overcome by heat, and negligently failed to inform him of the danger; and negligently failed to provide any medical attendance or care for a person who might succumb to heat when required to work at the gravel pit on such a hot day.

We may concede that the complaint states a cause of action for wilful failure to care for a servant who while engaged in his work has so succumbed to a heat attack or other illness that he is unable to care for himself. There need be no relation of master and servant to cast the duty upon one to care for a helpless fellow being when in peril of life or limb. Depue v. Flatau, 100 Minn. 299, 303, 111 N. W. 1, 2, 8 L.R.A. (N.S.) 485, where it is said:

"That whenever a person is placed in such a position with regard to another that it is obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he thus finds himself, and with which he is confronted, to avoid such danger; and a negligent failure to perform the duty renders him liable for the consequences of his neglect."

The duty of a master to his servant when helpless and in imminent peril cannot be less. But a careful scrutiny of the evidence makes clear that plaintiff wholly failed to prove the cause of action alleged or any cause of action.

The evidence is that on July 10 and 11, 1930, the weather was very hot, more so on the 10th than the 11th. Paape had worked

for defendant as a section-hand for about nine years, being at the time of his death foreman for a crew of six or seven men. This crew, with other section crews, had their headquarters at South St. Paul, but defendant carried them down to this gravel pit in the mornings and brought them back evenings. On the 10th Paape worked in the pit, directing his crew. He came down with the crew the next morning and was seen at different places in the pit in the forenoon, but the witnesses who saw him did not notice that he worked. He was either sitting, standing, or walking about.

Mr. Wall, in charge of the entire operations, was upon a returning gravel train that passed through the pit at about 1:20 p. m. very slowly so that he might observe how the work progressed and give such orders as might be needed, saw Paape, and called out to him as the train passed "to be sure and get that frog in at the west end of the pit" when the work train returned. Wall testified that Paape threw up his hand, and Wall took that to be a sign that Paape understood what Wall desired and that his directions would be carried out. Soon thereafter Paape was seen walking south out of the pit, cross an east and west road running parallel to the pit, apparently going to a spring some 20 feet below the road.

About 2 p. m. a farmer driving in his wagon easterly upon said road saw Paape come up the bank from the spring and walk ahead of the team some rods, then crawl under a fence near which was a tree. When he reached the shade of the tree he apparently fell down on his face. The farmer testified that as Paape walked he appeared to stagger or walk sideways. The farmer did not stop, but, as he passed a couple of men standing on a hand-car in the pit about 100 feet from him and about 150 feet from Paape, he called to them "they better come over there and take care of that man because he was pretty near all in." He testified that he did not know whether they heard him or not. He said they looked towards him, but there is no evidence that in their position they could see Paape south of the road under the tree. The hand-car was in the pit, which the testimony shows was some 10 feet below the surface. The farmer went on and did not pay any attention to Paape, nor did he turn his head to see whether the men on the hand-car gave

any indication that they understood the situation or took any step to care for Paape.

Another witness, a carpenter residing at Randolph, who was repairing some cars in the pit that day, said he saw Paape in the pit at various places apparently working; that he did not see him leave the pit; but that around two o'clock he had occasion to go to Randolph for material, in his automobile, and then saw Paape under the tree lying on his back moving his hand over his face, "chasing the flies off, as near as" the witness made out. In about 15 minutes the witness came back, saw Paape still lying there on his back, but thought nothing amiss. A few minutes afterwards someone discovered Paape dying or dead, and at once an alarm was given and immediate steps taken to procure a doctor.

Benavic, one of Paape's crew, testified that Paape worked on the 10th of July, which was hotter than the 11th. In the forenoon of the 11th Benavic saw Paape go down to the end of the line where they were raising a track and does not know what work he did. Benavic was a foreigner and did not succeed in giving a consistent or clear story of what he observed concerning Paape's condition— the incidents of the 10th and 11th of July being interwoven and confused. But he testified that after dinner on the 11th Paape came out with them, stayed a little while where they worked, and then walked towards the other gang; then, a little later, he saw him at a distance walk out of the gravel pit; and that the witness did not then know that Paape was sick. Counsel stresses this part of Benavic's testimony:

Q. "Well, you say Paape was sick that forenoon?

A. "Well, Paape was sick since day before about three o'clock he had a drink of water and that is what he was doing and he kind of fell about after the drink of water.

Q. "Well, did you notice how he acted around there the day before?

A. "Oh, he was looking pretty good. He was up and down, all over."

What he meant by "fell about after the drink of water" is uncertain; so is the time referred to. This is all that is necessary to

state, except perhaps that this gravel pit is north of the road referred to. It is about 120 rods long from east to west and has been excavated to the width of about 200 feet, the north and south banks being some 10 or 12 feet high.

Plaintiff advances the proposition that defendant, employing some 40 or 50 men in this gravel pit on a very hot day, was charged with the duty of anticipating that some one of the men would be overcome by heat, and hence it was negligent not to have a doctor or means at hand to care for and treat one so overcome. If the law imposes such a burden on the employer of 50 persons, it should also cast the same burden on the employer of one. No argument is needed to show that no one could employ another, if the employer is to be charged with the duty of having a doctor or nurse always at hand to care for the employe if he meets with sudden illness or an accident.

While not adopting the rule proposed by plaintiff, we think, as above stated, that it is the duty of an employer to render proper care to a servant who in the service through accident or sudden illness becomes unable to care for himself and is in imminent peril to life or limb unless immediate aid is given. If the employer, after knowledge of the servant's condition, fails to give reasonable aid, he may be chargeable for the consequences due to such negligence. But to charge the employer with a duty to care for a servant unable to care for himself, the former must have knowledge of the latter's helplessness or illness. Proof of such knowledge is signally wanting in this case. Of course defendant is a corporation, and so knowledge would have to be brought home to someone who represented defendant at the gravel pit. But there is no evidence that even a single one of defendant's employes knew of the condition Paape was in. That he went down to the spring, or rested, or sought the shade of a tree created no apprehension in any one of defendant's servants who saw Paape that he was sick or in danger. The only one who thought that Paape's appearance or movements indicated illness was the farmer; but, since he did not stop his team, made no effort to learn from Paape, though less than 50 feet from him, whether he was ill or not, nor satisfied himself that the

men on the hand-car, whom he called, understood his message, we must hold that the testimony of the farmer is insufficient to convey notice to defendant or to its agents or servants that Paape was ill and in need of immediate care.

Plaintiff cites cases to the effect that an employer must anticipate what is likely to happen to his employe. That principle is particularly applicable where the servant is to engage in hazardous work or is to operate dangerous and unguarded machines. Schumaker v. St. P. & D. R. Co. 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257; Raasch v. Elite Laundry Co. 98 Minn. 357, 108 N. W. 477, 7 L.R.A.(N.S.) 940; Lohman v. Swift & Co. 105 Minn. 148, 117 N. W. 418; Chiuchiolo v. New England Wholesale Tailors, 84 N. H. 329, 150 A. 540. But it does not apply to anticipating that the physical health and ability of a servant to care for himself while doing his ordinary work will suddenly cease. As far as the authorities go, the duty to care does not devolve upon the master until knowledge or notice that the servant is in urgent need of speedy succor is brought home to him. When in his presence or to his knowledge the servant is by accident or illness suddenly rendered helpless and exposed to serious peril or death, then the duty arises to use ordinary care to avert the peril and give proper care during the emergency; and even when the servant is not rendered helpless by the illness or accident and there is no urgency of emergency care, still if the master undertakes to care for the sick or injured servant the master is liable for failure to use due diligence in the care undertaken. The following authorities on which plaintiff relies go no further than just stated. Carey v. Davis, 190 Iowa, 720, 180 N. W. 889, 12 A. L. R. 904; Troutman's Admx. v. L. & N. R. Co. 179 Ky. 145, 200 S. W. 488; Hunicke v. Meramec Quarry Co. 262 Mo. 560, 172 S. W. 43, L. R. A. 1915C, 789, Ann. Cas. 1915D, 493; Tullgren v. Amoskeag Mfg. Co. 82 N. H. 268, 133 A. 4, 46 A. L. R. 380; Baker v. Adkins (Tex. Civ. App.) 278 S. W. 272. Pullman Co. v. Montimore (C. C. A.) 17 F. (2d) 2, is a parallel case to Schumaker v. St. P. & D. R. Co. 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257.

The learned trial court did not err when defendant's motion to dismiss was granted.

The judgment is affirmed.

*STONE, Justice,* took no part.