The VANDERBILT UNIVERSITY,
Appellant,

v.

Roy K. RUSSELL, Appellee.

Supreme Court of Tennessee.

Sept. 6, 1977.

I. Dyke Tatum, S. McPheeters Glasgow, Jr., Glasgow, Adams, Taylor & Philbin, Nashville, for appellant.

George E. Barrett, Charles R. Ray, Nashville, for appellee.

## OPINION

BROCK, Justice.

This is an action by surviving dependent husband to recover death benefits under the workmen's compensation act for the death of his wife. The Chancellor awarded benefits and the employer has appealed.

Appellee's wife, Mrs. Russell, was employed as a licensed practical nurse by Vanderbilt University Hospital. On the night of May 7, 1973, she fell while changing the sheets on a bed. She was taken to the hospital emergency room but refused to undergo treatment. Her night supervisor, Marian Bogan, observed that her face drooped somewhat and learned from others that her speech was slurred. Mrs. Russell explained that she was not wearing her false teeth. At the emergency room she got out of the wheelchair and returned unassisted to her work station. Later she was seen making an inexpert attempt to smoke a cigarette, apparently not realizing that it was unlighted. She insisted that she was better and that the symptoms had abated, and she remained on duty for the remainder of her shift, against the advice of Mrs. Bogan. She slept all the next day and did not work that night. On May 9 she had another attack and was taken to the hospital for treatment where she died on May 12 of a cerebral thrombosis or "stroke."

The only expert medical testimony was that of Dr. Gary William Duncan, a specialist in strokes. His opinion was that the

attacks of May 7 and May 9 were unrelated to the activities of Mrs. Russell at work or elsewhere. He attributed them to atherosclerosis, a progressive narrowing of the arteries, which is governed by genetic factors, metabolism, and possibly dietary and smoking habits, rather than physical exertions of the patient. The plaintiff, however, raises the issue that the death of the employee is causally related to her employment in that, on the occasion of the May 7 attack, the hospital failed to render appropriate treatment when she fell in the course of her employment and permitted her to remain on the job. Thus, it is insisted that the ensuing attacks and death should be held to have arisen out of her employment. This presents a question not heretofore addressed in any reported decision of this Court.

The common law rule respecting the duty owed by an employer to his employee who becomes incapacitated in the course of employment due to illness or injury has been stated as follows:

"When an employee has, by unforeseen accident to himself, while engaged in the line of his duty, been rendered helpless, the dictates of humanity, duty, and fair dealing demand that the employer if cognizant of the injury furnish medical assistance. Of course, this duty should rest upon the employer only in extraordinary cases, where immediate medical or surgical assistance is imperatively required to save life or avoid further serious bodily injury. It is one which arises out of strict necessity and urgent exigency. The duty arises with the emergency, and with it expires. The fact that the existing emergency occurred through the servant's own negligence and without fault on the part of the master is immaterial as far as the applicability of the emergency rule is concerned." 53 Am.Jur.2d at 194, Master and Servant, § 126. See also 56 C.J.S. Master and Servant § 162, p. 815.

This rule has been applied in many jurisdictions. See *Hunicke v. Meramec Quarry Co.,* 262 Mo. 560, 172 S.W. 43 (1914); *So. Pac. Co. v. Hendricks,* 85 Ariz. 373, 339 P.2d 731 (1959); *Carey v. Davis,* 190 Iowa 720, 180 N.W. 889 (1921); *Batton v. Atlantic Coast Line R. Co.,* 210 N.C. 756, 188 S.E. 383 (1936); *Szabo v. Pennsylvania R. Co.,* 132 N.J.L. 331, 40 A.2d 562 (1945); *Powers v. New York Central R. Co.,* 251 F.2d 813, 76 A.L.R.2d 1207 (2d Cir. 1958); *Gypsy Oil Co. v. McNair,* 179 Okl. 182, 64 P.2d 885 (1936); *Wilke v. Chicago Great Western Ry. Co.,* 190 Minn. 89, 251 N.W. 11 (1933); *Atchison T. & Santa Fe Ry. Co. v. Hix,* Tex.Civ.App., 291 S.W. 281 (1926); *Stanley's Admn'n v. Duvin Coal Co.,* 237 Ky. 813, 36 S.W.2d 630 (1931); *Richard v. Fireman's Fund Ins. Co.,* Alaska, 384 P.2d 445 (1963); *Rival v. Atchison, T. & Santa Fe Ry. Co.,* 62 N.M. 159, 306 P.2d 648, 64 A.L.R.2d 1098 (1957).

■ Does the Workmen's Compensation Law afford a remedy for an employee in situations similar to those covered by this common law "emergency" rule? As this Court has said, the Workmen's Compensation Law is "a complete substitute for the previous remedies in tort on the part of the employee." *Liberty Mutual Ins. Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760, 762 (1963). Since that law covers only disability resulting from accident arising out of and in the course of employment, the narrow question presented here is:

When an employee becomes helpless in the course of employment due to illness or other cause not related to his employment, is in dire need of medical attention or other assistance in order to prevent further injury and the employer has the ability to make such medical attention or other assistance available but does not do so, is such disability as results from this failure of the employer to be considered as having arisen out of and in the course of employment?

We hold the answer is "yes." We think that this is the legislative intent. Cf. *Dudley v. Victor Lynn Lines, Inc.,* 32 N.J. 479, 161 A.2d 479 (1960); *Walck v. Johns-Manville Products Corporation,* 56 N.J. 533, 267 A.2d 508 (1970).

■ Applying the emergency rule to this case, we fail to find any evidence in the record to support a finding of liability on

the part of the employer. When asked what course of conduct the employer should have followed upon the occasion of Mrs. Russell's attack on May 7, Dr. Duncan replied that she should have been advised to enter the hospital as a patient. This is precisely what was done by the defendant. Moreover, the employee, Mrs. Russell, was taken in a wheelchair to the emergency room for examination and treatment but she declined to accept treatment and walked back to her work station and insisted upon finishing her shift. This decision by Mrs. Russell not to accept treatment was, according to the medical testimony, made by a rational person. In the words of Dr. Duncan, "It (referring to the hospital record) says that she refused treatment, and there is no indication that she was disoriented and there is no reason for me to believe that she was." The rule that we have adopted herein does not require an employer to force medical treatment upon an unwilling employee who is conscious and oriented at the time.

The Chancellor found, and the appellee argues in this Court, that the defendant should not have permitted Mrs. Russell to finish her work shift on the night of May 7 following her attack and that this aggravated her condition and contributed to the final stroke. We are unable to agree. Mrs. Russell continued her shift over the objection of her supervisor, Mrs. Bogan. Moreover, Dr. Duncan did not testify that Mrs. Russell's return to work had any effect upon the progress of her illness. The evidence shows that Mrs. Russell regained her ability to speak, walk, and use her limbs and that the later attack, which was fatal, came on when she was at home, and was an unrelated event. When pressed to do so by counsel, Dr. Duncan refused to state that Mrs. Russell's superiors were at fault in not prohibiting her from finishing her shift on May 7.

Accordingly, we conclude that the record does not contain evidence to support the award made by the Chancellor. The decree of the Chancery Court is reversed and the complaint is dismissed. Costs of this appeal are adjudged against the plaintiff.

COOPER, C. J., and FONES, HENRY and HARBISON, JJ., concur.