IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 19, 2018 Session Heard at Chattanooga[1]

## KATHERINE D. CHANEY v. TEAM TECHNOLOGIES, INC.

**Interlocutory Appeal by Permission from the
Circuit Court for Hamblen County
No. 15-CV-009     Thomas J. Wright, Judge**

_____

**No. E2018-00248-SC-R9-WC**

_____

The issue in this interlocutory appeal is whether an employer, who did not use an automated external defibrillator (AED) to assist an employee who suffered a non-work related medical emergency, can be liable for workers' compensation benefits. An employee collapsed at work because of a medical condition unrelated to her employment. The employer knew of the employee's need for immediate medical assistance. The employer had acquired an AED but did not use it to assist the employee while awaiting the arrival of emergency medical responders. Medical responders assisted the employee, but she suffered a brain injury because of oxygen deprivation. We hold that an injury that is caused by an employer's failure to provide reasonable medical assistance arises out of and in the course of employment when an employee becomes helpless at work because of illness or other cause unrelated to her employment, the employee needs medical assistance to prevent further injury, the employer knows of the employee's helplessness, and the employer can provide reasonable medical assistance but does not do so. Here, the employee's claim did not arise out of her employment because her employer provided reasonable medical assistance and had no statutory or common law duty to use its AED to assist the employee. Therefore, the employer is not liable for workers' compensation benefits. We reverse the trial court's denial of the employer's motion to dismiss and remand to the trial court for an order of dismissal.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Trial Court Reversed; Remanded to the Trial Court**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

---

[1] We heard oral argument on the campus of Chattanooga State Community College in Chattanooga, Tennessee, as part of the Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Joseph W. Ballard, Atlanta, Georgia, for the appellant, Team Technologies, Inc.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellee, Katherine D. Chaney.


**OPINION**

**I.**

This case involves an employer's alleged failure to use an AED to assist an employee who presumably suffered cardiac arrest at work. Cardiac arrest occurs when the heart malfunctions and stops beating unexpectedly. An AED is a lightweight portable device that delivers an electric shock through the chest to the heart to restore a normal heart rhythm following cardiac arrest. The chance of a patient's survival decreases by seven to ten percent for every minute a normal heart beat is not restored.[2] Tennessee and many other states[3] have adopted statutes to encourage the acquisition and use of AEDs. *See* Tenn. Code Ann. § 68-140-401 to -409 (2013); *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886 (Tenn. 2016) (construing Tennessee's AED statutes).

In March 2013, Katherine D. Chaney collapsed while at work because of a medical condition unrelated to her employment. Chaney's heart stopped beating, and she could no longer breathe. Emergency medical responders were called to assist her. Chaney's employer, Team Technologies, Inc., had acquired an AED but did not use it to assist her. Medical responders revived Chaney, but she suffered a permanent brain injury caused by oxygen deprivation.[4]

---

[2] American Heart Association, *What Is an Automated External Defibrillator?*, https://www.heart.org/-/media/data-import/downloadables/pe-abh-what-is-an-automated-external-defibrillator-ucm_300340.pdf.

[3] *See, e.g*, Ariz. Rev. Stat. Ann. § 36-2261 (2009); Ark. Code Ann. § 20-13-1301 (2005); Cal. Civ. Code § 1714.21 (2016); Cal. Health & Safety Code § 1797.196 (2016); Del. Code Ann. tit. 16, § 3001C (2000); Fla. Stat. Ann. § 401.2915 (2012); Ga. Code Ann. § 31-11-53.1 (2011); 410 Ill. Comp. Stat. Ann. 4/1 (2000); Ky. Rev. Stat. Ann. § 311.665 (2000); La. Stat. Ann. § 40:1137.1 (1999); N.H. Rev. Stat. Ann. § 153-A:28 (2018); N.J. Stat. Ann. § 2A:62A-23 (2012); W. Va. Code Ann. § 16-4D-1 (1999).

[4] We take these facts from the allegations in Chaney's complaint. In reviewing the trial court's ruling on the motion to dismiss, we consider all relevant and material factual allegations in the complaint to be true and construe them liberally in favor of Chaney. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

In January 2015, Chaney sued Team Technologies in the Hamblen County Circuit Court, seeking workers' compensation benefits for the injuries resulting from Team Technologies' failure to use its AED.[5] Chaney asserted that her employer's failure to use the AED and/or its failure to train or hire an employee able to use an AED delayed resuscitation efforts, causing Chaney to sustain a brain injury.

Team Technologies filed two motions to dismiss. In the first motion, Team Technologies asked the trial court to dismiss Chaney's complaint because her injury was unrelated to her employment. In the second motion, Team Technologies argued that, under *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886 (Tenn. 2016), an employer has no statutory or common law duty to use an acquired AED. Chaney responded that under the emergency rule, *Vanderbilt University v. Russell*, 556 S.W.2d 230 (Tenn. 1997), Team Technologies had a duty to provide her with medical assistance, which included using an acquired AED, and that *Wallis* did not apply because it involved a duty owed to a business invitee, not an employee. The trial court denied the motions, ruling that Chaney had pleaded sufficient facts to set forth a prima facie case that her injury arose out of and in the course of employment; Team Technologies had an obligation to provide her with medical assistance under *Russell*; it was a disputed question of fact whether Team Technologies had provided adequate medical assistance under *Russell*; and *Wallis* did not address an employer's duty to use an AED.

The trial court granted Team Technologies' motion for permission to seek an interlocutory appeal. We then granted Team Technologies' application for permission to appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. We address these issues:

1) Whether this Court should revisit its holding in *Vanderbilt University v. Russell*, 556 S.W.2d 230 (Tenn. 1977), that Tennessee's Workers' Compensation Law provides a remedy for any disability resulting from an employer's breach of a duty to render aid to an employee who has suffered an illness or injury in the course of, but not arising out of, his or her employment.

2) Whether an employer has a statutory or common law duty to use an AED that it acquired as it relates to a workers' compensation case.

---

[5] Before filing this lawsuit, Chaney exhausted the required benefit review process. *See* Tenn. Code Ann. § 50-6-203(a)(1) (2008) (applicable to injuries occurring before July 1, 2014); *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 713 (Tenn. 2012).

## II.

*Standard of Review and Statutory Requirements*

Our standard of review in this interlocutory appeal involving a question of law is de novo with no presumption of correctness. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012) (citing *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010)). We examine the legal sufficiency of Chaney's complaint and do not consider the strength of her evidence; that is, we accept the complaint's factual allegations as true and construe them in Chaney's favor. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011) (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1977)).

To receive workers' compensation benefits, Chaney has to establish that she suffered an injury that arose out of and in the course of her employment that caused either disablement or death. *See* Tenn. Code Ann. § 50-6-102(12) (2008) (applicable to injuries occurring before July 1, 2014). There is no dispute that Chaney's injury occurred in the course of her employment; she collapsed while speaking with a supervisor at work. At issue is whether the facts Chaney alleged in her complaint, if taken as true, are sufficient to establish that her injury arose out of her employment.

To establish that an injury arose out of employment, an employee has to allege enough facts to show "a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Blankenship v. Am. Ordnance Sys., LLS*, 164 S.W.3d 350, 354 (Tenn. 2005) (citing *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005)). An employee cannot merely assert that her injury occurred at work; she has to allege that her injury resulted from a "danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Id.* (citing *Thornton v. RCA Serv. Co.*, 221 S.W.2d 954, 955 (Tenn. 1949)).

*Emergency Rule*

To meet the "arising out of" employment requirement, Chaney relies on the emergency rule adopted in *Russell* to assert that her employer had a duty to use an available AED to assist her after she suffered a medical emergency unrelated to her employment. In *Russell*, a nurse employed by Vanderbilt University Hospital fell while changing bed sheets during her night shift. 556 S.W.2d at 230. Her fall was caused by an "attack," later diagnosed as a stroke. Hospital staff took the employee to the hospital's emergency room in a wheelchair, but she declined treatment and returned to her station to complete her shift. The employee died less than a week later after having another stroke unrelated to her employment. The employee's husband sued the hospital for workers' compensation benefits asserting that the employee's second stroke arose out of her

employment because the hospital failed to provide adequate medical treatment after the first stroke. *Id.* at 231. The trial court awarded benefits, and the hospital appealed. *Id.* at 230–31.

We held in *Russell* that when an employee becomes helpless at work because of illness or other cause unrelated to her employment, needs medical assistance to prevent further injury, and the employer can make such medical assistance available but does not do so, then any disability caused by this failure of the employer is considered to have "arisen out of and in the course of employment." *Id.* The Court based its ruling on the common law rule that when an employee becomes helpless by an unforeseen accident while doing his job, the "dictates of humanity, duty, and fair dealing demand that the employer if cognizant of the injury furnish medical assistance." *Id*. This duty arises only in extraordinary circumstances where immediate medical assistance is required to save life or avoid further serious injury. *Id.* By adopting the emergency rule, the Court was following the lead of many other jurisdictions.[6]

In *Russell*, the adoption of the emergency rule did not result in an award of workers' compensation benefits. Instead, the Court held that the hospital was not liable for workers' compensation benefits because it had discharged its duty by taking the employee to the emergency room for treatment and advising her not to complete her shift. *Id.* at 232.

The basic premise of the *Russell* emergency rule remains good law. "Humanity, duty and fair dealing" still require an employer, if aware that an employee has been rendered helpless, to provide medical assistance. That said, courts should not apply this rule so broadly as to require employers to provide *any and all* medical assistance to a helpless employee. Instead, a reasonableness standard must be read into this rule.

For that reason, we clarify and restate the *Russell* emergency rule: an injury that is caused by an employer's failure to provide reasonable medical assistance arises out of and in the course of employment when an employee becomes helpless at work because of illness or other cause unrelated to her employment, the employee needs medical

---

[6] *See Powers v. N.Y. Central R.R. Co.*, 251 F.2d 813 (2d Cir. 1958); *Hunicke v. Meramec Quarry Co.*, 172 S.W. 43 (Mo. 1914); *S. Pac. Co. v. Hendricks*, 339 P.2d 731 (Ariz. 1959); *Carey v. Davis*, 180 N.W. 889 (Iowa 1921); *Batton v. Atl. Coast Line R.R. Co.*, 188 S.E. 383 (N.C. 1936); *Szabo v. Pa. R.R. Co.*, 40 A.2d 562 (N.J. 1945); *Gypsy Oil Co. v. McNair*, 64 P.2d 885 (Okla. 1936); *Wilke v. Chicago Great W. Ry. Co.*, 251 N.W. 11 (Minn. 1933); *Atchison, Topeka & Santa Fe Ry. Co. v. Hix*, 291 S.W. 281 (Tex. Civ. App. 1926); *Stanley's Adm'r v. Duvin Coal Co.*, 36 S.W.2d 630 (Ky. Ct. App. 1931); *Richard v. Fireman's Fund Ins. Co.*, 384 P.2d 445 (Alaska 1963); *Rival v. Atchison, Topeka & Santa Fe Ry. Co.*, 306 P.2d 648 (N.M. 1957).

assistance to prevent further injury, the employer knows of the employee's helplessness, and the employer can provide reasonable medical assistance but does not do so.

The requirement of *reasonable* medical assistance is supported by common law and statutory law. The *Russell* Court relied on two New Jersey decisions that contained this limitation. *Id.* at 231. In *Dudley v. Victor Lynn Lines, Inc.*, the Supreme Court of New Jersey recognized the common law requirement that employers "exercise *reasonable* care to put in the reach of the stricken employee such medical care and other assistance as the emergency thus created may *in reason* require, so that the employee may have his life saved or may avoid further bodily harm." 161 A.2d 479, 485 (N.J. 1960) (emphasis added). In the second case, *Walck v. Johns-Manville Products Corp.*, the New Jersey high court restated the rule: "[I]f an employee becomes ill at work from a non-work-connected cause and is helpless to provide medical aid for himself, the employer must exercise *reasonable* care to put within reach such aid as the emergency may require." 267 A.2d 508, 523 (N.J. 1970) (emphasis added).

Other states also impose on employers a duty to provide reasonable assistance to an employee experiencing an emergency at work. *See, e.g.*, *Hossack v. Metzger*, 156 F.2d 501, 506 (8th Cir. 1946) (holding that standard of conduct required of employer was that of a reasonably prudent man under like circumstances); *S. Pac. Co. v. Hendricks*, 339 P.2d 731, 733 (Ariz. 1959) (requiring an employer to exercise reasonable care to procure medical aid and assistance for a helpless employee); *MacDonald v. Hinton*, 836 N.E.2d 893, 899 (Ill. App. Ct. 2005) (citations omitted) (holding that an employer has a duty to exercise reasonable care to protect an employee who is in a position of danger or serious harm and the employer knows about the employee's situation); *Rival v. Atchison, Topeka & Santa Fe Ry. Co.*, 306 P.2d 648, 651 (N.M. 1957) (quoting 56 C.J.S. *Master and Servant* § 162) (stating that an employer must take reasonable measures and make reasonable efforts to assist an injured employee, even if the employer is not responsible for the injury); *Handy v. Union Pac. R.R. Co.*, 841 P.2d 1210, 1221 (Utah Ct. App. 1992) (concluding that an employer had a legal obligation to use reasonable care in obtaining medical assistance for a helpless employee). *See also* Restatement (Second) of Torts § 314B(2) (1965) (stating that master is liable for negligent failure to care for helpless servant hurt within the scope of employment); 30 C.J.S. *Employers' Liability* § 42 (Dec. 2018 Update) (explaining an employer's duty to exercise reasonable care to protect an employee who comes into a position of imminent danger or serious harm).

*Employer's Use of AED*

Given that Team Technologies had a duty to provide reasonable medical assistance to Chaney, the question then becomes whether Team Technologies had a duty to use an AED to assist Chaney after she experienced a medical emergency.

- 6 -

Although we have not previously decided this issue, we have held that a business has neither a statutory nor a common law duty to use an acquired AED to assist a patron. *Wallis*, 509 S.W.3d at 901, 904. In *Wallis*, a patron at a fitness facility collapsed and died following a fitness class. The patron's surviving spouse sued the facility's owner and operator, alleging negligent failure to use an onsite AED, to train personnel to use the AED, and to comply with applicable state statutes. *Id.* at 889. We held that the facility's owner and operator had no duty to use an acquired AED under the AED statutes, Tennessee Code Annotated section 68-140-401 et seq. *Id.* at 901. We first noted that the AED statutes encourage but do not require entities to acquire AEDs or use AEDs if acquired. *Id.* (citing Tenn. Code Ann. § 68-140-401, -409). Before entities can use or allow others to use an AED, the AED statutes impose certain training, maintenance, registration, and program development requirements on businesses. *Id.* (citing Tenn. Code Ann. § 68-140-404); *see also Hudson v. Town of Jasper*, No. M2013-00620-COA-R9-CV, 2013 WL 5762224, at *4 (Tenn. Ct. App. Oct. 22, 2013) (stating that, under section 404, mere acquisition does not authorize an entity to use an AED or to allow its use by others because it requires "additional steps" before any use). In addition, the AED statutes grant immunity from civil liability for negligent acts or omission related to an acquired AED to entities that comply with the statutory requirements. *Wallis*, 509 S.W.3d at 901 (citing Tenn. Code Ann. § 68-140-406).

In *Wallis*, we also held that the facility's owner and operator had no common law duty to use an AED. *Id*. at 903–04. The common law generally imposes no duty to aid or protect others, but there is an exception when there is a special relationship between an alleged tortfeasor and an injured party—such as the relationship between a business and a patron. *Id.* at 902 (citing *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009); *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013); 65A C.J.S. *Negligence* § 650 (2013)). Tennessee courts have relied on section 314A of the Restatement (Second) of Torts[7] and other court decisions to define the scope of the duty to render aid in a special relationship. *Id.* (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 859–60 (Tenn. 1985); *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 78 (Tenn. Ct. App. 1990)). Under section 314A, this duty requires a business to take "reasonable action to protect or aid" a patron who is injured or becomes ill on the premises, but a business need not provide all medical care it may "'foresee might be needed by its patrons or to provide the

---

[7] Section 314A, entitled *Special Relations Giving Rise to Duty to Aid or Protect*, imposes a duty

> to take reasonable action . . . to protect . . . against unreasonable risk of physical harm, and . . . to give . . . first aid after [a party in a special relationship] knows or has reason to know that [the other party is] ill or injured, and to care for [the other party] until [the other party] can be cared for by others.

Restatement (Second) of Torts § 314A(1) (1965).

sort of aid that requires special training to administer.'" *Id.* at 902 (quoting *McCammon v. Gifford*, No. M2001-01357-COA-R3-CV, 2002 WL 732272, at *4 (Tenn. Ct. App. Apr. 26, 2002)); *see also Richardson v. Contemporary Servs. Corp.*, No. 3:12-cv-01278, 2013 WL 3976629, at *3 (M.D. Tenn. Aug. 2, 2013) (recognizing a business's duty to take "reasonable steps to seek medical aid" for a customer it knows or should know is injured on its premises unless a competent person has already assumed care of the customer). Thus, in *Wallis*, we concluded that imposing a common law duty to use an acquired AED would conflict with the AED statutes, which expressly require special training before use. *Id.* at 903 (citing Tenn. Code Ann. § 68-140-404(3)).

Our holding in *Wallis* that a business had no common law duty to aid a patron by using an AED is consistent with decisions by other state appellate courts that have considered this issue. *See Abramson v. Ritz Carlton Hotel Co.*, 480 Fed. App'x 158, 161–62 (3d Cir. 2012) (applying New Jersey law); *Verdugo v. Target Corp.*, 327 P.3d 774, 792 (Cal. 2014); *Goins v. Family YMCA*, 757 S.E.2d 146, 148 (Ga. Ct. App. 2014); *Salte v. YMCA of Metro. Chicago Found.*, 814 N.E.2d 610, 615 (Ill. App. Ct. 2004); *O'Gwin v. Isle of Capri–Natchez, Inc.*, 139 So. 3d 783, 787–90 (Miss. Ct. App. 2014); *Charleston Station, LLC v. Stephens*, No. 63943, 2015 WL 9480322, at *6 (Nev. Dec. 23, 2015); *Miglino v. Bally Total Fitness of Greater N.Y, Inc.*, 985 N.E.2d 128, 132 (N.Y. 2013). *But see Aquila v. Ultimate Fitness*, No. CV085017159S, 2011 WL 2611820, at *4 (Conn. Super. Ct. June 15, 2011) (ruling that a genuine issue of material fact remained about whether the defendant breached its duty of care to a business invitee by failing to own an AED and have staff trained in its use).

We find that the *Wallis* analysis also applies to an employer-employee relationship. First, our AED statutes apply to all persons or entities who acquire AEDs. *See* Tenn. Code Ann. § 68-140-403 (imposing requirements on any "person or entity that acquires an automated external defibrillator (AED)"). These statutes do not single out employers for special treatment or impose on them a duty to use an AED. Based on the plain language of the AED statutes, an employer is treated like any other "person or entity" that acquires an AED. As we held in *Wallis*, these statutes do not require any entity to use an AED. 509 S.W.3d at 901. Thus, an employer has no statutory duty to use an AED to assist an employee.

Second, the emergency rule requires an employer to render reasonable medical assistance, not any and all medical assistance. Under the common law, businesses have a similar duty to aid patrons who need emergency assistance but need not provide aid that requires special training to administer. *Wallis*, 509 S.W.3d at 902; *see also Applebaum v. Nemon*, 678 S.W.2d 533, 537 (Tex. App. 1984) (holding that while day care center had duty to procure medical aid, it had no duty to provide lifesaving aid that required special training). Tennessee Code Annotated section 68-140-404 requires employers to ensure

special training for users and registration with local emergency services before using or allowing use of an acquired AED. Employers should not be treated differently or have a higher duty because of their special relationship with their employees under these circumstances.

Chaney argues we should apply a remedial and equitable construction of the Workers' Compensation Law and extend our holding in *Russell* to require an employer to use an acquired AED to assist an employee who suffers an emergency at work. This argument fails because we cannot rewrite our AED statutes and need not revise the common law emergency rule.

In the only other workers' compensation case we have found involving an employer's duty to use an AED, the Kansas Court of Appeals reached a similar result. In *Adee v. Russell Stover Candies, Inc.*, an employee died after suffering a heart attack while at work, and her surviving spouse sued for workers' compensation benefits. 186 P.3d 840, 841 (Kan. Ct. App. 2008). After finding the employee on the floor, gasping for air, a supervisor left to retrieve a first aid kit while another employee began cardiopulmonary resuscitation (CPR). The employer had a policy to certify its supervisors in CPR and first aid so that they could respond to incidents until emergency personnel arrived. *Id.* at 842–43. The employer called 911 immediately but did not use an available AED; paramedics arrived and assumed care within ten minutes of the heart attack. The employee died three days later. *Id.* at 842. Under Kansas law, a heart attack is not a compensable injury, but benefits can be awarded if a worker suffered a loss of chance of surviving the heart attack because of the employer's negligence and the loss arose out of the employment. The employee's surviving spouse presented expert testimony that with continuous CPR and use of an AED, the employee's survival chances would have been optimized. *Id.* at 843. The Kansas Court of Appeals held that the employer's duty to render emergency aid did not include the use of an AED. *Id.* at 847. The appellate court found that medical testimony showed that the employer's supervisors would have had to use the AED within three minutes of the employee's heart attack to increase her survival chances to 74% and that the employer had not trained its supervisors on how to use the AED. *Id.* at 846. However, the employee's surviving spouse did not show that the supervisors' failure to use the AED contravened the employer's policy and that the training given to supervisors did not specifically include the use of an AED. Therefore, the court concluded, the supervisors' obligation to provide emergency care did not include the use of an AED. *Id.* at 847.

Although the result in *Adee* hinged on the conclusion that the employee's supervisors did not have a duty to use the available AED under an employer policy, the opinion's analysis is still useful. First, the Kansas appellate court's ruling accords with our holding in *Wallis* that the duty to render aid does not extend to providing aid that

requires special training, such as using an AED. Second, the opinion underscores that an employer can fulfill its duty to provide reasonable medical assistance without using an available AED. Here, as in *Adee*, emergency personnel were summoned and assumed care of the injured employee.

Although not involving a workers' compensation claim under state no-fault law, the decision in *Sells v. CSX Transportation, Inc.*, 170 So. 3d 27 (Fla. Dist. Ct. App. 2015), is also instructive. In *Sells*, a railroad employee suffered cardiac arrest after getting off a train to operate a switch. A co-worker found him about two minutes later. Because of the railroad's inability to communicate the employee's exact location, emergency personnel took over half an hour to reach the employee and could not save his life. The employee's widow filed a Federal Employers Liability Act (FELA) claim alleging, among other things, that the railroad was negligent in failing to equip its trains with AEDs and to train its employees in CPR and AED use. *Id.* at 31. Under FELA, an injured worker must establish that his employer's negligence caused the injury, and any recovery is reduced by any negligence of the employee. *Id.* at 32. The employee's surviving spouse had to show that the railroad failed to provide a safe workplace by establishing that the employee became ill at work, that he was at risk of death or serious bodily injury without prompt medical treatment, that the railroad was aware of his illness but failed to furnish prompt medical attention, and that the delay caused in whole or in part his death or injury. *Id.* at 33. On appeal, the Florida appellate court held that the railroad's duty under FELA to provide general first aid to the employee did not require its employees to provide skilled treatment, such as CPR or use of an AED. *Id.* at 39. Instead, the court determined that an employer need only summon medical assistance and provide reasonable first aid until emergency personnel arrives. *Id.* at 38 (citing Restatement (Second) of Torts § 314A cmt. f) (the defendant "will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained"). This result under applicable federal law is consistent with our rationale and holding here.

In sum, an employer has neither a statutory nor a common law duty to use an AED to provide medical assistance to an employee under the circumstances presented in this case.

### III.

Taking the complaint's factual allegations as true and construing them in Chaney's favor, we hold that her complaint fails to state a cause of action. Chaney's claim did not arise out of her employment because Team Technologies provided reasonable medical assistance and had neither a statutory nor a common law duty to use its AED to assist

Chaney. We reverse the trial court's denial of Team Technologies, Inc.'s motions to dismiss and remand to the trial court for entry of an order of dismissal. We tax the costs of this appeal to Katherine D. Chaney, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE