FILED
Nov 15, 2023
07:55 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Timothy Burke | ) | Docket No. 2022-06-0311 |
| | ) | |
| v. | ) | State File No. 55612-2021 |
| | ) | |
| Steve Towers Enterprises, LLC, a/k/a | ) | |
| Steve Towers Holding, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 19, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

---

**Reversed and Remanded**

---

In this appeal of a compensation order granting summary judgment to the employer, the employee argues there are multiple disputed questions of material fact regarding whether the injury arose primarily out of his employment. The employee was working as a manager of an automobile repair store in July 2021 when he and a co-worker began discussing the possible sale of a gun. Subsequently, the co-worker accidentally shot the employee, causing extensive injuries. The employee sought workers' compensation benefits, and the employer filed a motion for summary judgment, arguing that the injury did not arise primarily out of the employment as purchasing a personal weapon and the presence of a gun were not risks inherent to managing an automobile repair shop. The employee argued there were questions of material fact regarding, among other things, whether the injured employee asked to see the gun, whether the employer knew that its employees regularly brought guns to work, and whether the employee handled the gun in an effort to disarm it for the safety of the store and general public. The trial court granted the employer's motion for summary judgment, and the employee has appealed. Following careful review of the record and the arguments of counsel, we reverse the grant of summary judgment and remand the case for additional proceedings.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Jason Denton, Lebanon, Tennessee, for the employee-appellant, Timothy Burke

L. Blair Cannon, Alpharetta, GA, for the employer-appellee, Steve Towers Enterprises, LLC, a/k/a Steve Towers Holding, LLC

1

**Factual and Procedural Background**

Timothy Burke ("Employee") was working as a manager of an automobile repair shop owned by Steve Towers Enterprises, LLC, a/k/a Steve Towers Holding, LLC ("Employer"), when a co-worker accidentally shot him. On July 19, 2021, just before closing the store for the day, a co-worker, John Graves ("Graves"), was sweeping the floor when he told Employee he had recently sold a gun and regretted the transaction. Employee mentioned he had been looking for a gun and would have considered purchasing it if he had known it was for sale. Upon hearing this, another worker, Joshua Daniels ("Daniels"), advised Employee that he had a handgun that he would sell to Employee. At that point, all three men went to Daniels's truck to look at the gun.

There is conflicting evidence in the record as to the events that followed. Employee contends that Daniels could not find the weapon in his truck initially, and that while he was looking, the phone began to ring inside the shop. Employee went to answer it and says he indicated to Daniels and Graves that he would return outside once Daniels found the firearm. It is undisputed that Employee went inside to answer the phone and that Daniels followed him inside carrying the weapon. Although it is disputed when exactly Employee saw the weapon inside the store, both parties agree that Employee handled the gun inside the store. At some point, Daniels picked up the gun and accidentally shot Employee. The bullet went through both of Employee's legs. Employee was transported by ambulance to the Rutherford County emergency department, and he was then transferred to Vanderbilt Medical Center due to uncontrolled bleeding. Thereafter, he underwent surgery to repair his left superficial femoral artery with a saphenous vein graft.

Employer investigated the incident immediately and sent Tanya Graham ("Ms. Graham") from Employer's main office to speak with Employee. She visited him at Vanderbilt Medical Center and obtained his statement, which she later transcribed. She also obtained a statement from Graves. Employee was moved into a rehabilitation facility following surgery and also began treatment with Katherine Gorman, Ph.D., for an alleged mental injury. Employer terminated Employee for failure to "maintain a safe and secure work environment." A notice of denial of the workers' compensation claim was issued on August 6, 2021, stating the incident was due to Employee's efforts to buy a gun and "was not in the course and scope of his employment."

Employee filed a petition for benefit determination on March 3, 2022, and a dispute certification notice was issued in June 2022. During discovery, the parties deposed Employee; Graves; Ms. Graham; Employee's supervisor, Kenneth Graham

("Mr. Graham"); the owner of the company, Steven Towers ("Towers"); and the insurance adjuster initially assigned to the claim. They were unable to locate Daniels.[1]

During his deposition, Employee testified that although he went out to Daniels's truck to look at the gun, he was not actually interested in buying it and was instead merely trying to "humor" Daniels. He stated Daniels was unable to locate the gun in his truck initially because it was "cluttered," and he had to return to the store to answer the phone, telling Daniels he would come back out when he found the gun. According to Employee's testimony, he was still on the phone when Daniels walked into the store with the gun, although he did not see him enter the store. Once Employee was off the phone and realized Daniels had brought a loaded gun into the store, he testified he removed the "clip" and placed it on the opposite side of the desk, then walked around the desk and placed the weapon in the holster. He believed the gun to be "clear" at that time. He then told Daniels to take the gun back out to his vehicle. At that time, he answered another call, and he was still on the phone when he realized he had been shot. According to his testimony, he believed Daniels put the "clip" back in the gun prior to shooting him. In his written statement, which Ms. Graham prepared after meeting with him in the hospital, Employee stated that upon removing the "clip" from the gun, he told Daniels he was no longer interested in the gun as the price was much too high before turning to answer the phone again.

Graves's account is markedly different than that of Employee. Graves testified that after they walked out to the truck, Daniels immediately found the gun in the door of his truck, and all three men looked at the gun in the parking lot. At that time, the phone rang, and Employee went to the office to answer it, with Daniels and Graves following. Graves testified that Daniels was carrying the gun and placed it on the desk, removing the "magazine." After the phone call, according to Graves's testimony, Employee picked up the gun, looked at it, and placed the "magazine" back in the gun. At some point, Daniels picked up the gun again, and Employee turned to face the service desk computers. Graves testified that, at that point, he began looking at his phone before hearing the gunshot, so he did not witness the incident itself.[2]

Regarding guns in the workplace, Graves testified he and others often had guns in the shop in their toolboxes and that both Employer and Mr. Graham, in his role as Regional Manager, were aware of that practice. He further testified that, in approximately April 2021, Mr. Graham told employees they could no longer have guns in the shop. Graves believed the change in policy was due to a manager at a different location shooting a dumpster with a .357 Magnum "all the . . . time" but admitted that the story was a rumor he could not verify. Graves had previously submitted a written

---

[1] According to Ms. Graham, she obtained a statement from Daniels at the time of the accident. However, that statement is not in the record.

[2] The use of "clip" and "magazine" in this opinion are direct quotes from the testifying witnesses.

statement about the incident and spoke with the police. In the police report, Graves indicated he was watching his phone the entire time he was in the office, and in his written statement for Employer, he stated Employee "look[ed] the gun over" following three phone calls, at which time Graves began to "play on [his] phone" until he heard the gunshot.

At the time of his deposition, Mr. Graham, Employee's supervisor, was no longer with Employer. He also reported suffering two strokes in October 2020, which affected his memory. He testified he can generally remember everything that happened prior to the strokes, but he may or may not remember things that occurred since that time. He testified he recalled working with someone named "Tim" and that this person was shot, but he had limited memory as to who hired Employee, how he was trained, and whether Employer had a firearm policy. Mr. Graham ultimately terminated Employee at the request of Towers but could not remember the exact reason.

Ms. Graham, wife of Mr. Graham, was also no longer with the company at the time of her deposition. She had not reviewed any documents prior to her deposition, but, to the best of her recollection from taking various witness statements, she believed one or more witnesses stated that Employee had placed the "clip" back into the gun before the shooting occurred.

Towers, owner of the company at the time of the accident, testified Employee was terminated for "entertaining purchasing a firearm on the company premises within company work hours" as it did "not promote a safe work environment." He testified he did not carry a firearm and did not know Mr. Graham to carry one. He further stated he was unaware of any guns being stored inside any of his stores, and he did not know of any directive to employees to remove their firearms from their toolboxes. It was his understanding that Employee loaded the gun and that Daniels then accidentally shot Employee.[3]

Following discovery, Employer filed a motion for summary judgment on April 30, 2023. Employer argued Employee did not sustain an injury arising primarily out of his employment, as the injury was in no way related to his job duties as a manager of an automobile repair shop, and guns were not "a risk inherent in the nature of" Employee's work. Employee responded, arguing that there were numerous disputed material facts, including but not limited to whether Employee was on the phone at the time of the shooting; whether he was attempting to maintain a safe environment and disarm the gun prior to the shooting; and whether guns were typically present in the shop. The trial court, following a hearing, granted the motion for summary judgment and dismissed the case. In doing so, the court stated, "One employee attempting to sell a gun to a coworker

_____

[3] Although Employee requested it in formal discovery, Employer was unable to provide a complete copy of any employee handbook in effect at the time of the shooting.

4

bears no relation to that business purpose. Being accidentally shot by a coworker is not a risk inherent to employment in a vehicle repair shop. Nor would the presence of a handgun for sale by a coworker naturally or normally be expected." Relying on *Harris v. Nashville Center for Healing and Rehabilitation*, No. 2019-06-1008, 2021 TN Wrk. Comp. App. Bd. LEXIS 9 (Tenn. Workers' Comp. App. Bd. Jan. 28, 2021), the trial court determined Employee's injury did not arise out of the employment, as there was not "apparent to the rational mind, upon consideration of all of the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Id.* at *8. Although acknowledging Employee had asserted several facts he believed to be both material and disputed, the court stated it did not need to list every disputed fact and why it was not material, as it found "no genuine fact issue for trial" among "the *undisputed material facts*." (Emphasis in original.) Thus, the court determined summary judgment to be appropriate as a matter of law, and Employee has appealed. Upon careful consideration of the record and the arguments of counsel, we reverse the trial court's decision and remand the case.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). Moreover, a trial court's ruling on a motion for summary judgment is reviewed *de novo* with no presumption of correctness. *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 895 (Tenn. 2016). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

Employee contends the trial court erred in granting summary judgment to Employer. A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden is on the party pursuing summary judgment to demonstrate both that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter

of law. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). If the moving party makes a properly-supported motion, the burden of production then shifts to the nonmoving party to demonstrate the existence of one or more genuine issues of material fact at the summary judgment stage. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015). Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Furthermore, "[a] fact is material 'if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Akers v. Heritage Med. Assocs., P.C.*, No. M2017-02470-COA-R3-CV, 2019 Tenn. App. LEXIS 5, at *14 (Tenn. Ct. App. Jan. 4, 2019) (quoting *Byrd*, 847 S.W.2d at 215). "A 'genuine issue' exists if 'a reasonable [factfinder] could legitimately resolve that fact in favor of one side or the other.'" *Akers*, 2019 Tenn. App. LEXIS 5, at *15 (quoting *Byrd*, 847 S.W.2d at 215). Finally, Tennessee's appellate courts have concluded that summary judgment should rarely be granted in workers' compensation cases because it is "inappropriate when there is a dispute as to facts, or where there is an uncertainty as to whether there may be such a dispute." *Berry v. Consolidated Systems, Inc.*, 804 S.W.2d 445, 446 (Tenn. 1991). Even when it appears the employee "may have incredible difficulty" convincing the trier of fact of a compensable claim, summary judgment is inappropriate if granting the motion would "involve fact-finding or the weighing of evidence." *Id.* at 445-46.

In this case, Employer's central assertion in its motion for summary judgment is that the gun was present in the store due to Employee's personal interest in possibly purchasing the gun, which it argues was in no way related to his job duties as the manager of the store. In Employer's view, the injury, although unfortunate, did not arise out of the employment as a matter of law. In support of its motion for summary judgment, Employer filed a statement of undisputed material facts that included the following statements, taken verbatim from Employer's filing:

- Employee did not believe it was necessary to have a firearm for him to perform his job with Employer.

- Upon learning that John Graves had recently sold his gun, Employee told Graves that he might have been interested in purchasing Graves'[s] gun.

- Employee told Daniels he would be glad to look at the gun.

- Employee [] walked into the lobby of the store holding the gun.

These specific facts were all disputed by Employee in his response to the summary judgment motion. Employee also raised several issues which he contended were disputed material facts, including, as stated in Employee's filing:

6

- It was safe for [Employee] to unload the loaded gun that Mr. Daniels brought into the store.

- The termination letter references an Employer policy that Employee did not get training for from . . . Employer.

In a reply brief, Employer disputed these statements but also averred they were not material to the legal issue underlying its dispositive motion. Employer also disputed other additional facts such as whether Employee was on the phone at the time of the shooting; whether Employee's supervisor carried a gun; whether Employee had been told making deposits at night was unsafe; whether Employee intended to buy a gun; whether Employee had knowledge Daniels was bringing the gun into the store; when Employee realized the gun was in the store; whether it was appropriate for Employee to handle the gun in the store; and whether Employee handled the gun for purposes of potentially purchasing it rather than to unload it. Employer contended that, although these facts were disputed, none of them were material to the legal issue and, regardless of how such factual issues might be resolved, the injury did not arise primarily out of the employment.

A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. Employer admits and the trial court agreed that the injuries occurred in the course and scope of Employee's work, but Employer maintains the injuries did not arise from his employment regardless of any factual disputes. Therefore, to assess whether summary judgment was appropriate, we must consider the disputed facts, of which there are many, and determine whether any of them must be resolved by the factfinder to address the compensability of the claim.

"[A]n injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Carmichael v. J. C. Mahon Motor Co.*, 11 S.W.2d 672, 673 (Tenn. 1928). Further, "an employee cannot merely assert that her injury occurred at work; she has to allege that her injury resulted from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Chaney v. Team Technologies, Inc.*, 568 S.W.3d 576, 579 (Tenn. 2019). In *Carmichael*, an employee was shot with an air gun by a customer's son while working as a porter in the employer's automobile repair shop, causing an injury to his eye. *Id.* at 614-615. The trial court dismissed the complaint, determining the injury did not arise out of his employment. *Id.* at 614. On appeal, the Supreme Court determined the case should have been heard on the merits, stating the employee "was injured because he was in the garage engaged in the duty that was assigned to him under his contract of employment, and the injury was the result of conditions inseparably connected with the public service given by the petitioner's employer to its patrons.

Under such conditions, the injury may be fairly traced to the employment as the contributing proximate cause." *Id.* at 617.

Although the standard applied by the Court in *Carmichael*, "contributing proximate cause," is not the standard to be applied in the present case, whether an act was "outside" the scope of employment is still a question of fact. *Taylor v. Linville*, 656 S.W.2d 368, 370 (Tenn. 1983). In *Taylor*, the plaintiff, a waitress, was shot by her manager who mistakenly believed his gun to be loaded with blank cartridges. *Id.* at 369. The plaintiff received workers' compensation benefits but also filed a common law tort action against the manager individually. *Id.* at 368. The manager contended the employee's exclusive remedy was workers' compensation, and the trial court agreed, dismissing the case on summary judgment. *Id.* at 369. On appeal, the Court of Appeals reversed, concluding that, because the manager was outside the course of his employment when he accidentally shot the employee, he was not immune from suit. *Id.* The Supreme Court did not take issue with the appellate court's conclusion that a co-worker who acts outside the course of his employment can be held liable for injuries he caused another person. However, the Supreme Court concluded the Court of Appeals erred in addressing whether the manager was acting outside of his employment in the first instance. *Id.* at 370. It remanded the case for a hearing on the merits, stating, "[w]hether the act was outside the course of the Defendant's employment is a question of fact. . . . An appellate court should be slow to make factual determinations in the absence of a full hearing." *Id.*

Here, the trial court's order did not fully explain why the factual issues in dispute were immaterial to the legal question at hand. As stated previously, in reviewing summary judgment orders, appellate courts must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Wallis*, 509 S.W.3d at 895. In this instance, when the evidence is viewed in a light favorable to the nonmoving party, we are unable to conclude that the disputed facts are immaterial to the question of whether the hazard that caused Employee's injury was "connected with the nature of [the] employment." *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 230 (Tenn. 2007). Among other things, the parties dispute exactly what sequence of events led to the gun's being inside the store; why Employee handled the gun once it was in the store; and what actions took place causing the gun to be fired. It is further disputed what was required of Employee as a manager to ensure the safety and security of the store and general public and what policies, if any, Employer had regarding the presence of guns in the workplace. In short, we hold that Employee met his burden of demonstrating genuine issues of material fact impacting the question of whether this injury arose primarily out of his employment, making summary judgment inappropriate.

**Conclusion**

For the foregoing reasons, we reverse the trial court's order and remand the case. Costs on appeal are taxed to Employer.

8



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Timothy Burke | ) | Docket No. 2022-06-0311 |
| | ) | |
| v. | ) | State File No. 55612-2021 |
| | ) | |
| Steve Towers Enterprises, LLC, a/k/a | ) | |
| Steve Towers Holding, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 19, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of November, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Jason G. Denton | | | | X | jdenton@rma-law.com mhickman@rma-law.com |
| L. Blair Cannon | | | | X | l.blair.cannon@thehartford.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

_____

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov